No. 12182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE OF MONTANA,

　　　　　　　　Plaintiff and Respondent,

　　　-vs-

EDWARD R. MURDOCK,

　　　　　　　　Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
　　　　　　　Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

　　　For Appellant:

　　　William Dee Morris argued, Helena, Montana 59601.

　　　For Respondent:

　　　　　Thomas F. Dowling, County Attorney, Helena, Montana 59601.
　　　　　Leif B. Erickson, Deputy County Attorney argued, Helena,
　　　　　　Montana 59601.
　　　　　Robert L. Woodahl, Attorney General, Helena, Montana 59601.
　　　　　J. C. Weingartner, Assistant Attorney General, argued,
　　　　　　Helena, Montana 59601.

---

Submitted: June 19, 1972

Decided: AUG 2 4 1972

Filed: AUG 2 4 1972

_Thomas J. Kearney_
　　　　　　　　　　Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted of first degree arson following a jury trial in the district court of Lewis & Clark County, Hon. Victor H. Fall, district judge. Defendant was subsequently sentenced to ten years in the Montana State Prison and now appeals from the judgment of conviction.

During the month of June 1971, defendant Edward R. Murdock started to build a house on a tract of land in the Helena valley known as the Sewell tracts. By about August 1 the two-story house, 40 x 30 feet, was largely completed but the second floor was unfinished.

In the latter part of July defendant contacted Schroeder Brothers Company, a Helena insurance brokerage firm, to purchase fire insurance on his house. They declined to sell him fire insurance at that time because the house was not completed. On August 3 defendant again contacted Schroeder Brothers for the same purpose after the house was completed. Frank Mihelish of Schroeder Brothers appraised the house at $25,000 and suggested defendant purchase a fire insurance policy in this amount. Defendant, however, insisted on a $35,000 policy which Schroeder Brothers wrote and defendant paid for.

During defendant's second visit to Schroeder Brothers he was asked if there was a mortgage on the house, and he answered in the negative. On August 6 defendant asked Schroeder Brothers to add the name of S. F. Parker to the policy as mortgagor. On August 10, defendant again appeared at Schroeder Brothers to check whether his policy was in full force and effect and was advised that it was.

A fire occurred on August 19 about 6:30 a.m. when defendant was not at home. The house was partially destroyed by fire. The West Valley Fire Department answered the fire alarm. Upon arrival they found the house locked and forced the door to gain entry. During the course of putting out the fire and securing the premises, they noted various indications which led them to believe the fire was of incendiary origin and that arson might be involved.

- 2 -

They so advised the deputy state fire marshal, Gary Younker.

Younker arrived at defendant's house about 3:00 p.m. and commenced his investigation. He inspected the partially burned house, took pictures, and interviewed witnesses. He gained entry to the unoccupied house by removing the boards from the door which the firemen had used to secure the premises when they left after putting out the fire that morning.

The investigation by the firemen and deputy state fire marshal Younker revealed that the fire started in the furnace room on the first floor. Oil soaked rags were stuffed in the wire and control system of the oil furnace. The rags led to two plastic containers containing a flammable liquid. The thermostat on the furnace was set at approximately 75 degrees. When the thermostat clicked on the furnace ignited the rags which in turn started a blaze in the furnace room which started burning the ceiling of the furnace room. Directly over the furnace room on the floor of the second story, various volatile items were stored--2 five gallon cans of gasoline, 1 twenty-five gallon can of propane with gas escaping from it, some flammable paint, and two rolls of tarpaper. The carpeting in the house was soaked with oil.

The firemen who fought the blaze noted the entire house was permeated with the odor of oil. They also observed that all of the walls were paneled and there was no insulation between the paneling and the outside walls. The firemen and deputy state fire marshal Younker concluded the fire was the result of arson.

Mr. Val Ketchum, who helped install the furnace, indicated that three weeks after the furnace was installed, defendant called him and told him the oil lines were leaking. Ketchum checked and found no such leak. About a week later, defendant again called Ketchum and told him there was "oil running all over the place". Ketchum investigated and found two drops of oil on a fitting. At this time Ketchum completely checked the furnace and gave it the

- 3 -

seal of approval.

The furnace was equipped with various safety devices which immediately shut off the furnace in the event of a malfunction. Ketchum stated the only way the furnace could start a fire such as the one involved here would be if it were tampered with. He investigated the furnace after/and the fire found rags jammed in the electrical system which damaged the safety mechanisms, which in turn resulted in a continual flow of oil. He concluded that the furnace had been manually tempered with causing it to work improperly.

On the day after the fire, defendant appeared at Schroeder Brothers, inquired if the fire had been reported, and was taken to the insurance adjuster to discuss settlement.

It later developed that a $40,000 mortgage had been recorded on the property running from defendant to S. F. Parker, the mortgagor. This mortgage was given to secure payment of a promissory note for $40,000 bearing 6% interest and payable at the rate of $100 per month, including interest. Defendant was both the sole payee and the sole maker on the note.

Defendant was charged with first degree arson by information filed directly in the district court. He entered a plea of "not guilty". Prior to trial he moved for the suppression of certain objects and things, allegedly taken from his house as a result of an unlawful search and seizure, and his motion was granted.

Trial by jury commenced on November 8, 1971. Basically defendant's defense was (1) failure of the state to prove the essential elements of the crime beyond a reasonable doubt, and (2) alibi. Defendant did not testify.

During the course of trial the state was permitted to examine Jack Parker, husband of the alleged mortgagor S. F. Parker, as an adverse witness. Counsel for defendant also represented Parker at the trial. Defendant claimed such adverse witness ruling and examination was improper,

- 4 -

that the district court ruled Parker a defense witness, and that defendant was denied the right of cross-examination.

Subsequently, defendant attempted to establish his defense of alibi by testimony that he had gone to Harlowton, Montana, the day before the fire; stayed in a motel there that night; left the motel the next morning; and did not return to his home in the Helena valley until the day after the fire. Defendant called the motel owner and attempted to secure admission in evidence of a motel registration card on which his name was printed. The motel owner could not identify defendant as the person who stayed at the motel. The proferred motel registration card was denied admission in evidence.

Defendant was convicted of first degree arson as charged. He was sentenced to ten years imprisonment in the state prison where he now remains. Following denial of various post-trial motions by defendant, he now appeals from the judgment of conviction.

Defendant assigns ten issues for review upon appeal which can be summarized in this manner:

(1) Was there probable cause to support the filing of a direct information?

(2) Was evidence secured as the result of an unlawful search and seizure used at the trial to procure defendant's conviction?

(3) Was evidence relating to insurance and credit improperly admitted at the trial?

(4) Did the district court err in denying defendant's motion for a directed verdict of acquittal?

(5) Was the motel registration of defendant improperly denied admission in evidence?

(6) Was there error in jury instructions?

(7) Was there a fatal variance between the crime charged and the proof?

(8) Insufficiency of the evidence to overcome the presumption of innocence?

(9) Did the district court erroneously apply the law of arson in its pretrial, trial, and post-trial rulings?

(10) Did the district court err in declaring witness Jack Parker an adverse witness, in requiring the defendant to accept this witness as a defense witness, and in openly quarrelling with defendant's counsel in the presence of the jury over this issue?

Directing our attention to the first issue, we hold there was probable cause to support the filing of a direct information. Deputy state fire marshal Younker testified under oath in open court in support of the state's motion for leave to file the information direct. A complete transcript of his testimony is included in the court file. From his testimony the following facts are established: (1) The smell of petroleum products permeated the house. (2) Oil soaked rags had been placed in the fire chamber of the furnace. (3) These rags ran down into two containers of fuel oil. (4) The thermostat on the furnace had been set for approximately 75 degrees on a summer day in August. (5) The house was over-insured. (6) Defendant owed bills all over town for construction materials. (7) The house was mortgaged for $40,000. (8) The monthly payments on the mortgage would cover only half the interest accrued during the first year and less than that in subsequent years. (9) The carpeting in the house was soaked with fuel oil. (10) There were substantial amounts of gasoline, propane, flammable paint and tarpaper located directly above the furnace room. (11) The house was locked and defendant had the only keys. (12) The fire was the result of arson. (13) The fire was arranged to occur during the early morning hours when defendant was absent. (14) The mortgage and promissory note were questionable. These facts are abundantly sufficient to establish probable cause for filing a direct information charging defendant with first degree

- 6 -

arson. See State v. Dunn, 155 Mont. 319, 472 P.2d 288; State v. Johnson, 149 Mont. 173, 424 P.2d 728; State v. Peters, 146 Mont. 188, 405 P.2d 642; and section 95-1301, R.C.M. 1947, for the procedural and substantive requirements for establishing probable cause.

On/second issue, defendant claims that Gary Younker, the deputy state fire marshal, entered defendant's house without a search warrant for the purpose of securing evidence to establish arson and while there he took pictures and removed certain items of physical evidence. Defendant contends the use of such evidence at the trial, despite the court's previous ruling to suppress this evidence, constitutes an unreasonable search and seizure in violation of Article III, Section 7 of the Montana Constitution and the Fourth Amendment to the United States Constitution.

At the outset we observe that Montana statutes grant the deputy state fire marshal the right to do what he did here. He has the authority to inspect all fires. Section 82-1209, R.C.M. 1947. He is granted the power to inspect and examine all buildings where a fire has occurred. Section 82-1217, R.C.M. 1947. Section 95-701(d), R.C.M. 1947, provides that a search is lawful if done within the scope of a right of lawful inspection granted by law. The items of physical evidence he secured from the premises were suppressed and not used at the trial. The pictures he took and his testimony concerning his inspection and examination of the premises were admitted in evidence. Thus it is clear that the deputy state fire marshal was not required to secure a search warrant to do this under the foregoing statutes, and that the evidence was admissible pursuant to such statutory authority.

The real question here, however, is whether this satisfied state and federal constitutional requirements of a search warrant and the prohibition against unreasonable searches and seizures. We hold that the better reasoning supports the view that what occurred in the instant case does not violate such constitutional requirements.

- 7 -

Younker's testimony as to what he saw and discovered at the time of his inspection is admissible under the "open fields" doctrine. State v. Perkins, 153 Mont. 361, 457 P.2d 465; Romero v. Superior Court, 72 Cal.Rptr. 430, 266 C.A.2d 714. Furthermore, the constitutional prohibitions are designed to protect a person's right to privacy; it can hardly be contended that the right to privacy in a partially burned dwelling after a fire is paramount to the right of the public to a reasonable inspection of premises damaged by fire in the interests of public safety and detection of incendiary fires. But perhaps the most compelling reason of all is simply that probable cause for the issuance of a search warrant could seldom be established if access to fire-damaged premises is denied without a search warrant.

The third issue is whether evidence relating to insurance and credit was properly admitted. Testimony was permitted at the trial tending to prove that defendant was indebted to several businesses for construction materials and supplies, that liens had been filed, that fire insurance in excess of the value of the house had been procured, that a questionable mortgage and note had been executed relating to the premises, and like matters. This evidence is admissible to show defendant's motive for the crime charged. Although motive is not an element of the crime, motive or lack of motive is a circumstance tending to establish guilt or innocence. State v. Hollowell, 79 Mont. 343, 256 P. 380; State v. Simpson, 109 Mont. 198, 95 P.2d 761. The jury was so instructed by court's instruction No. 16. There was no error here.

Defendant's fourth issue for review is whether defendant's motion for a directed verdict of acquittal at the conclusion of the state's case-in-chief should have been granted. Defendant contends the state failed to prove beyond a reasonable doubt three essential elements of the crime of first degree arson: (1) that the fire was of human incendiary origin; (2) that defendant set the fire, and (3) that defendant was actuated by malice.

From what has been reviewed heretofore, it is beyond cavil that the fire was of human incendiary origin. It is equally clear there is substantial evidence that defendant caused the house to be burned. This is equivalent to setting the fire under Montana's first degree arson statute, section 94-502, R.C.M. 1947, which reads in pertinent part:

"Any person who willfully, feloniously and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house * * * shall be guilty of arson in the first degree * * *."

To be sure the evidence is circumstantial, as in most arson cases. Nobody saw defendant start the fire or saw him prepare the premises for the fire that resulted. But the evidence does show that: defendant was the sole occupant of the house; he had the only keys to the house; there were no signs of forced entry into the house; the house was prepared for a fire by jamming the safety devices and electrical circuit in the furnace with oily rags leading to containers filled with volatile liquids; gasoline, propane, and other flammable materials were placed on the floor directly above the furnace; the thermostat was set to fire the furnace in the early morning hours when the temperature on the inside of the house fell below 75 degrees; the rugs in the house were soaked with oil; the furnace had manually been tampered with to cause it to malfunction and emit a continuous flow of oil when it turned on; and defendant, to the exclusion of anyone else, had both the motive and opportunity to burn the house down. Such circumstantial evidence is sufficient to establish that defendant caused the fire.

That defendant set the fire maliciously is also established beyond a reasonable doubt by the foregoing circumstantial evidence. Malice in law may be either express or implied and consists of willful and wanton destruction of the house by fire. The foregoing circumstantial evidence is sufficient to establish implied malice beyond a reasonable doubt if believed by the jury, which precludes a directed verdict of an acquittal.

This Court previously held in State v. Yoss, 146 Mont. 508, 514, 409 P.2d 452:

> "A directed verdict in a criminal case in this jurisdiction is given only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict."

Here, the evidence in the state's case-in-chief meets this test. Accordingly the district court's denial of defendant's motion for a directed verdict of acquittal was correct.

Defendant's fifth issue is that the trial court erred in refusing the motel registration slip in evidence. This evidence was offered through Mabel Blaquire, the operator of the Troy Motel in Harlowton, Montana, who was called as a defense witness to establish the presence of defendant there during the night of August 19, when his house in the Helena valley was burned. It was denied admission in evidence on the grounds of improper foundation and irrelevance.

Mrs. Blaquire testified that she could not identify the defendant as the person who signed the motel registration or occupied the motel room. The registration contained no written signature, but did contain the printed name of defendant. It also contained a truck license number and description that was not connected up with defendant.

Although the motel registration was undoubtedly a business record, it did not tend to prove or disprove any issue in the case. The identity of defendant as the person who printed the name on the motel registration was never established. Even if it be assumed that defendant was that person, his physical presence there would not tend to establish an alibi under the circumstances in which the fire started in this case. It does not tend to prove or disprove any issue in the case. As such it is entirely irrelevant, in addition to lack of proper foundation for its admission. The district court was correct in denying its admission in evidence.

The sixth issue raised by defendant pertains to jury instructions.

- 10 -

Neither his brief nor oral argument discloses either what instructions given were incorrect or what proposed instructions should have been given. Under such circumstances any objection to jury instructions is waived, and there is nothing for us to decide.

Defendant's seventh issue concerns whether there is a fatal variance between the crime charged and the proof at the trial. He argues that the crime charged is first degree arson and the proof at the trial was directed at proving the burning of a building to defraud an insurer, a separate and distinct crime.

From what has been said heretofore, the elements of the crime of first degree arson were established as a jury question by the state's proof. The fact that the same proof might also tend to establish a different crime, i.e. burning a building to defraud an insurer, in no way establishes a variance between the crime charged and the proof. The insurance feature of this case tends to establish a motive for the crime of first degree arson with which defendant was charged. As defendant was neither charged nor convicted of burning a building to defraud an insurer, no variance is established.

Issue eight questions the sufficiency of the evidence to overcome the presumption of innocence with which defendant is clothed throughout the trial. The circumstantial evidence previously discussed and held to be sufficient to convict rebuts any such presumption of innocence that might otherwise prevail. This contention is totally devoid of substance and merits no further discussion.

Defendant's issue nine contends that the district court erroneously applied the law of arson in its rulings on pretrial, trial, and post-trial motions of defendant. If we properly understand defendant's argument, he contends that the admission of inadmissible, irrelevant and prejudicial evidence unrelated to the elements of the crime of first degree arson prevented him from having a fair trial. Defendant refers to the admission of photographs taken by the deputy state fire marshal on his inspection of the house after

the fire, to evidence of defendant's indebtedness for construction materials, and to the procuring of fire insurance on the house.

Heretofore, we have held the photographs properly admissible. We have also held that evidence relating to defendant's indebtedness and the fire insurance on his house was properly admitted to show motive for the crime charged. These holdings render the present contention of defendant to be without foundation.

The tenth and final issue for review concerns the witness, Jack Parker. Defendant contends the district court committed prejudicial error in declaring Parker an adverse witness, in requiring the defendant to accept Parker as a defense witness, and in openly quarrelling with defendant's counsel in the presence of the jury over this issue.

It must be noted that defendant's attorney was also the attorney for witness Parker. Defense counsel drew the mortgage in question and advised witness Parker relative to his privilege against self-incrimination at the trial.

Prior to the trial the state secured an order from the court requiring Parker to submit to a deposition. The record shows that Parker was very hesitant to testify and the state had considerable difficulty in getting him to answer questions relative to the circumstances leading to the $40,000 note and mortgage and the consideration for its execution.

Parker was subpoenaed as a witness for the state at the trial. When he was called by the state to the witness stand at the trial, the transcript indicates he was called as an adverse witness. Prior to the state's examination, Parker was advised by defense counsel to refuse to answer any questions on the grounds of possible self-incrimination. He claimed this right several times during the course of the state's examination.

When the state concluded its examination and witness Parker was turned over to defense counsel for questioning, the following colloquy occurred

- 12 -

between defense counsel and the court:

## "DIRECT EXAMINATION

"By Mr. Morris:

"Q. Mr. Parker, prior to the time this fire occurred, you came down to see me about the insurance on the mortgage? A. Yes.

"Q. And we found out that Murdock had been charged with a crime. By the way, may the record show that the fact I honor this examination with cross-examination, doesn't mean I accept it, Your Honor.

"THE COURT: What is that?

"MR. MORRIS: Object to it, but I will still cross-examine because I have the right to and I think a duty to.

"THE COURT: I don't follow you. This is your witness.

"MR. MORRIS: He is not my witness. The state called him.

"THE COURT: As an adverse witness. You said you represented him. Now you are on direct examination at this time. You don't cross-examine cross-examination.

"MR. MORRIS: May we have an offer of proof, Your Honor, in this matter?

"THE COURT: Yes, you may later on.

"MR. MORRIS: Before I cross-examine?

"THE COURT: Before you cross-examine?

"MR. MORRIS: Yes.

"THE COURT: You can't cross-examine cross-examination.

"MR. MORRIS: I want to make an offer of proof.

"THE COURT: You may make one at recess. If you examine this witness, it's direct examination on your part. I have established that he is an adverse witness to the State, and if you examine him now, it's direct examination and you are bound by his answers.

"MR. MORRIS: May the record show an objection to that ruling?

"THE COURT: Surely."

On this basis defendant claims prejudicial error.

We consider this entire matter a tempest in a teapot. Assuming arguendo that the adverse witness rule is not applicable to criminal proceedings, only harmless error not affecting the substantial rights of the defendant is involved; such harmless error is not grounds for reversal. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L ed 2d 705; State v. Langan, 151 Mont. 558, 445 P.2d 565.

Witness Parker was not examined by the state by use of leading questions. Whether the state was bound by his answers is irrelevant here, because the witness gave no testimony unfavorable to the state.

Defendant was denied the right of cross-examination of this witness under the adverse witness rule and was compelled by the ruling of the trial judge to examine the witness on direct examination as his own witness. But what prejudice resulted to defendant? We find none under the circumstances disclosed here. Defendant was accorded the full right of examination of this witness unfettered by the confines of the state's examination. Defendant's examination of the witness in this manner was broader than his examination rights under cross-examination to which he contends he was entitled. During this examination the defendant brought out circumstances attending the execution of the note and mortgage which, if believed by the jury, were favorable to defendant.

Nor do we see how the colloquy between the court and counsel over the adverse witness rule and defendant's rights of examination of witness Parker prejudiced defendant in the eyes of the jury. In any event a colloquy cannot be carried on by the trial judge alone, and where defendant's counsel participates therein he can hardly be said to be an innocent bystander. We fail to see how defendant has a meritorious cause for complaint on this score.

The judgment of the district court is affirmed.

- 14 -

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices