No. 12531

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BERNARD JAMES FITZPATRICK,

Defendant and Appellant.

---

Appeal from: District Court of the Third Judicial District,
Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

James J. Masar argued, Deer Lodge, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas J. Beers argued, Assistant Attorney General,
Helena, Montana
M. K. Daniels, County Attorney, Deer Lodge, Montana

---

Submitted: October 2, 1973

Decided: DEC 4 1973

Filed: DEC 4 1973

Thomas J. Kearney
Clerk

Hon. Edward T. Dussault, District Judge, sitting in place of Mr. Justice John Conway Harrison, delivered the Opinion of the Court.

The defendant and appellant, Bernard James Fitzpatrick, an inmate of Montana State Prison, was convicted on February 28, 1973, of murder in the second degree upon a jury verdict in the third judicial district, County of Powell.

Appellant and one Gus Hamilton Gardner, another inmate, were charged by information filed October 12, 1972, with "wilfully, wrongfully, unlawfully, deliberately, feloniously premeditatedly and with malice aforethought, kill and murder one ALFRED FALCON, a human being.", on April 15, 1972. The victim was also an inmate of the State Prison.

At the close of the State's case, Gardner's counsel moved for a directed verdict and same was granted by the trial court.

Upon denial of his motion for judgment of acquittal notwithstanding the verdict, or in the alternative, for a new trial, defendant Fitzpatrick appealed.

The defendant raises three issues on appeal:

1. The verdict was not justified by the evidence.

2. The trial court erred in admitting in evidence: (a) color photographs of the scene of the crime; (b) pieces of a sweatshirt; (c) trousers and a pocket; (d) pair of tennis shoes.

3. That the court erred in not admitting inquiries into the possibility of clothing exchange among inmates.

On the evening of April 15, 1972, at approximately 7:00 p.m. at Rothe Hall, a part of the Montana State Prison complex located west of Deer Lodge, Montana, Alfred Falcon, an inmate, was stabbed and died approximately three hours later in the Powell County Memorial Hospital.

Rothe Hall is a dormitory type building, where many inmates were housed at the time of the incident. The assault

- 2 -

occurred in the basement in a small room known as the Indian League Room, where inmates were allowed to practice musical instruments. On the ground or main floor there are two dormitory rooms, #1 to the north and #2 to the south. Between these two dormitory rooms is a lobby area where there is located the guard's receiving desk, a pool table, television set and a barber chair.

The shift lieutenant, Wallace Atkinson, was in the lobby area when he observed Alfred Falcon at the front door, which is located just east of his desk, attempting to open the door. Atkinson went to his aid and assisted him inside, laying him down on some outgoing laundry which was piled near the front door. The lieutenant observed that Falcon was cut severely on the right side of his neck and was bleeding profusely.

Atkinson immediately locked the basement and lobby area and sounded the alarm.

Earlier in the evening between the hour of 6:00 and 7:00 p.m. Atkinson's attention was drawn to the defendant, Fitzpatrick, because of the unusual design on the back of a sweatshirt he was wearing. It depicted an Indian with a bow and arrow shooting at a butterfly.

Shortly after the alarm was given, Warden Crist, Deputy Warden Blodgett and Sheriff Collings arrived. The warden initiated an immediate search. During the course of the investigation, the trash cans from dorms #1 and #2 were pulled into the lobby area. While the search was in progress Lieutenant Atkinson again saw defendant Fitzpatrick, who at that time had changed into a shirt and sweater, in the lobby area.

Found in the trash can of dorm #1 was a knife with a three inch blade, wet and bloody remnants of a sweatshirt which was pieced together on the floor and formed a gray sweatshirt with the name "Fitzpatrick" thereon and the peculiar Indian design above described.

Also found in the same trash can was a pair of wet and bloody denim trousers from which the pockets had been torn.

The next morning, a pocket which matched the trousers was found in the prison sewage lagoon. On this pocket was the name "Fitzpatrick".

Photos of the small room in the basement where the crime occurred clearly depicted the scene and also showed footprints in the blood in the room, which footprints led from the scene of the altercation into the rest of the basement and down a hallway toward the backstairs that lead to dorm #1.

There was also found at the scene of the crime the workings of a watch which was broken and which had stopped at 7:01. This workings fit exactly into the watch case on the victim's arm.

The shoes and items of clothing were sent to the F.B.I. and the report, admitted in evidence by stipulation, revealed type "O" blood on the shoes, sweatshirt and trousers. The report also showed that the pocket and trousers were of the same material.

While there was no evidence of the victim's blood type, there was evidence that Fitzpatrick's blood was type "O".

Defendant's defense was an alibi. He was a resident of dorm #2, but testified that at the time of the crime he was in dorm #1, talking with inmate Corliss about an order for handcrafted leather belts that Corliss was adept at making and that he was seen talking to Corliss by inmate Fiddler. Both Corliss and Fiddler testified in his behalf. Defendant also testified that he never wore the above described sweatshirt and denied the alleged assault that resulted in the death of Falcon.

Inmate Corliss testified that Fitzpatrick had in fact been to his bunk in dorm #1 about 6:30 p.m. or thereabouts with an order for 3 leather belts with names on them, which names were supplied by defendant. Corliss bunked next to Fiddler. Fiddler testified

he saw defendant talk to Corliss while he was changing sheets on his bunk and in the meantime went to take the sheets to the outgoing laundry pile and there saw Falcon. On returning to his bunk Fiddler made some remark about an inmate being on the outgoing laundry and bleeding badly. Upon hearing that remark, Fitzpatrick departed for the lobby area.

Fitzpatrick testified his was "O" type blood and that he wore 8D or 9C tennis shoes. He also testified that he was working as a cook in Rothe Hall the Saturday evening of April 15, 1972, as they were shorthanded and that when he finished his shift at 6:00 p.m. he was wearing regulation blue shirt and jeans. He testified further that he then went to his dorm #2, took a shower and changed to a gray sweatshirt with a five inch letter across the back of it and wore the same jeans. He then went to the lobby area to get a football game started but couldn't, so went back to his dorm and changed to a prison issue blue shirt and returned to the lobby and to dorm #1 to see Corliss about the leather belts. Defendant denied the assault on Falcon.

It is to be noted that, although defendant Fitzpatrick and defendant Gardner were tried together, each had separate counsel and that no motion was made for separate trials.

The first issue raised by appellant is that the verdict was not justified by the evidence.

Admittedly the State's case was proven totally by circumstantial evidence. The rules that govern the weight and sufficiency of circumstantial evidence are set out in the case of State v. Cor, 144 Mont. 323, 326, 396 P.2d 86 (1964). There, this Court stated:

> "Circumstantial evidence is not always inferior in quality nor is it necessarily relegated to a 'second class status' in the consideration to be given it. The very fact it is circumstantial is not a sufficient allegation to justify a reversal of the judgment for such evidence may be and frequently is, most convincing and satisfactory. In any criminal

case, evidence that is material, relevant and competent will be admitted, 'nothing more and nothing less.' The test is whether the facts and circumstances are of such a quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt. If such be the case, then the court should not, indeed cannot, set aside the solemn findings of the trier of the facts."

Or, stated another way, this Court has held that to justify a conviction on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt, but must be inconsistent with any other rationale (i.e. reasonable) conclusion. Cor, at 327; State v. Stoddard, 147 Mont. 402, 408, 412 P.2d 827 (1966).

As to the quality and quantity of evidence necessary, the rule is that if substantial evidence is found to support the verdict, then it will stand. State v. White, 146 Mont. 226, 229, 405 P.2d 761 (1965). This Court in Stoddard stated:

"First we should note that this court is not a trier of fact * * * In view of the presumption of innocence at the trial, the jury must have been instructed to that effect, but on appeal after conviction the rule changes. Then, if the record shows any substantial evidence to support the judgment, the presumption is in favor of such judgment."

In the present case, there is very little contradictory evidence between the witnesses as to the facts.

Corliss, used as a witness by defendant, actually corroborated the State's witness as to the gray sweatshirt and then the blue shirt worn by defendant that evening between the hours of 6:00 and 7:00 p.m.

As this Court has held many times over, the jury is the fact finding body in our system of jurisprudence, and its decision is controlling. The jury is free to consider all the evidence presented and to pick and choose which of the witnesses it wishes to believe. If sufficient testimony was introduced, as well as exhibits to justify the jury's findings, then its conclusion will

- 6 -

not be disturbed unless it is apparent there was a clear mis-
understanding by the jury or that there was a misrepresentation
made to the jury.

To find a person guilty beyond a reasonable doubt, each
fact in a chain of circumstances that will establish guilt need
not be proven beyond a reasonable doubt. What must be proven is
that there is not a reasonable doubt arising from consideration
of all the evidence in the case. State v. Medicine Bull, Jr.,
152 Mont. 34, 445 P.2d 916 (1968); People v. Eddy, 123 C.A.2d 826,
268 P.2d 47, 52 (1954); People v. Kross, 112 C.A.2d 602, 247
P.2d 44, 51 (1952); People v. Deibert, 117 C.A.2d 410, 256 P.2d
355, 362 (1953).

Thus, what are the facts and circumstances which the jury
believed? The jury could have concluded from the evidence that
Fitzpatrick was wearing the gray sweatshirt with the peculiar
Indian design on its back when Lt. Atkinson saw him between the
hours of 6:00 to 7:00 p.m. on the night of the killing. The de-
fendant denied wearing such a sweatshirt; that this was the same
sweatshirt which was wet and bloody and found in the trash can
in dorm #1 at approximately 7:30 p.m.; that in this same trash
can which contained defendant's sweatshirt, there was also dis-
covered a paring knife, along with a pair of wet and bloody
trousers with the pockets ripped out. One of these pockets was
later discovered and identified as part of the trousers belong-
ing to defendant. The jury could have concluded from the pictures
of the scene that a lot of blood was spilled in this altercation
and such blood would probably be present on the killer's clothing.
They could conclude that Fitzpatrick was not where he claimed he
was at approximately 7:00 p.m. and that he did not have on the
clothes he said he was wearing. This is true because inmate Corliss
testified that it was entirely possible that Fitzpatrick had on a

- 7 -

sweatshirt when they talked, and inmate Fiddler gave a prior inconsistent statement saying that Fitzpatrick did have on a gray or white sweatshirt when Fiddler saw him around 7:00 p.m. Thus, if the defendant and Fiddler were lying as to the clothes defendant was wearing, the jury could certainly conclude they were lying as to Fitzpatrick's whereabouts at 7:00 p.m. The facts that the clothing and the coverup seem to place defendant at the scene of the crime, and that the victim's broken watch found at the scene had stopped at 7:01, seem to be most persuasive evidence that the defendant was there at 7:00 p.m.

In Stoddard, at 408, this Court held that in reviewing a case the court is to give to each circumstance in evidence all the legal effect toward guilt which it could support to see whether a rational conclusion of innocence was excluded. Hence, if all the legal effect toward guilt is given to the facts and circumstances which the jury believed in this case, then it is evident that substantial evidence was found to support this verdict. There were twelve jurors that reviewed this evidence, and all twelve conclusively determined the defendant's guilt.

After consideration of all these facts, (Medicine Bull, Jr., supra) it is clear that the quality and quantity of the facts and circumstances in this case did legally justify the jury's determination that Fitzpatrick was guilty of second degree murder beyond a reasonable doubt.

Defendant's second issue on appeal concerns whether the trial court erred in admitting in evidence (a) color photographs of the scene of the crime; (b) pieces of a sweatshirt; (c) pair of trousers and a pocket; (d) a pair of tennis shoes.

As to the color photos of the scene of the crime, the objection was that they were inflammatory, served no purpose, and were designed to prejudice the jury.

The rule in Montana regarding the admissibility of photographs was first stated in the case of Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 61, 37 P.2d 1025 (1934). This Court said:

> " * * * However, photographs stand on the same footing as diagrams, maps, plans, and the like, and, as a general rule, whenever relevant to describe a person, place, or thing, they are admissible for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case."

This rule has been expounded by this Court through the years. The Court in State v. Warrick, 152 Mont. 94, 100, 446 P.2d 916 (1968), held that color photographs that have probative value are admissible. In State v. Logan, 156 Mont. 48, 60, 473 P.2d 833 (1970), this Court held that photographs that are probative and material are admissible. This was followed in State v. O'Donnell, 159 Mont. 138, 142, 496 P.2d 299 (1972).

However, this Court, in refining this general rule, there stated:

> " * * * When the purpose of an exhibit is to inflame the minds of the jury or excite the feelings rather than to enlighten the jury as to any fact, it should be excluded. State v. Bischert, 131 Mont. 152, 159, 308 P.2d 969." (Emphasis supplied).

Hence, the question before the Court is whether these photos were introduced into evidence for the probative purpose of enlightening the jury or whether they were introduced for the purpose of inflaming the minds of the jury? It is clear the purpose was probative and it is equally clear that these photos do have probative value. It must be remembered that this case was built purely on circumstantial evidence; thus, it was necessary that every element of evidence that had probative value be introduced in order that the jury might more fully understand the proof and apply the evidence. The photos depicted the scene of the crime as it was very shortly after the assault when the first witnesses

saw it.  The photos showed blood all over the room, which certain-

ly helped to demonstrate that this was a malicious, vicious

attack.  Finally, the immense amount of blood at the scene was

certainly probative in demonstrating the high degree of probability

that the assailant got blood on himself and his clothing.  As to

the fact that one picture also showed a bat and a steel bar, the case

of O'Donnell at p. 143, is controlling.  There, a photo admitted

into evidence depicted a stick which the defense contended had

nothing to do with the crime and, in fact, its connection with the

crime was never established.  As to this photo, the Court in

O'Donnell said:

> "While the stick does not appear to be relevant,
> we are of the opinion that the pajamas, shoes
> and telephone cord are relevant and material
> and the photographs depicting these items were
> properly admitted.  Evidence that is admissible
> for one purpose, but not for another, must not
> be excluded.  Teesdale v. Anschutz Drilling Co.,
> 138 Mont. 427, 357 P.2d 4. * * *"  (Emphasis
> supplied).

Thus, it is obvious that the purpose of introducing these

pictures was for their probative value.  They were relevant to

the issues in the case.  Once this relevance is established, the

fact that a photograph may be inflammatory should not render it

inadmissible any more than inflammatory word descriptions should

render testimony inadmissible, so long as the purpose is probative

and the true facts and conditions are described.  Jones on Evidence,

6th Ed., Vol. 3, sec. 17:50 (1972).

A pair of tennis shoes was found in dorm #2.  These

shoes had blood stains of type "O" blood and inside of them was

inked the name "Tom Rivard".  They were offered in evidence to-

gether with the pieces of sweatshirt, trousers and pocket and ob-

jected to on the ground that they were not properly marked at the

time they were found and by the person who found them.  Thus, it

is the defendant's contention that the state did not prove that no

substantial change had taken place in the articles while in their custody.

Factors that should be considered when dealing with the chain of possession of physical evidence are the nature of the article, the circumstances involved in its storage and preservation, and the likelihood of outsiders tampering with it. The rule in Montana, dealing with the foundation that must be laid by the state in order to introduce physical evidence, was most recently explained in the case of State v. Wilroy, 150 Mont. 255, 258, 434 P.2d 138 (1967). This Court said:

> " * * * Failure to either properly identify the
> article, or to prove that no substantial change
> has taken place in the article, while in custody,
> constitutes ground for an objection that the
> proper foundation has not been shown." (Emphasis
> supplied).

This Court in Wilroy cited the case of State v. Wong Fong, 75 Mont. 81, 241 P. 1072 (1925), in expounding its rules on the introduction of physical evidence. Wong Fong held that it was only incumbent upon the state to demonstrate prima facie that no substantial change had taken place in the article. The Court said:

> " * * * It was not incumbent upon the state to
> prove that it [package containing cocaine] could
> not have been tampered with. It was not necessary
> that all possibility of its having been tampered
> with should be excluded by affirmative testimony.
> * * * It was only necessary to identify the package
> and to make a prima facie showing that there had
> been no substantial change in it to warrant its
> introduction in evidence. * * *" (Emphasis
> supplied).

Thus, it is implicit within these rules that, once a prima facie showing is made, it is incumbent upon the opposing party to prove to the contrary. No such proof was offered by the defendant.

In Wilroy, physical evidence similar to that in the case at bar was introduced and admitted. In that case, the lower court admitted a man's right shoe, a pair of man's white undershorts, a man's white T-shirt and a pair of man's white trousers. The

- 11 -

defendant contended that the identification was not sufficient.
This Court found that the identification was sufficient and said:

> " * * * we find the identification to have been
> sufficient. The lack of specific or <u>positive</u>
> <u>identification marks</u> is not of great import for
> the items were not so uncommon that a reasonable
> identification cannot be made. <u>The lack of posi-</u>
> <u>tive identification goes to the weight of the</u>
> <u>evidence rather than its admissibility</u>. * * *
> It is sufficient if they are shown to be connected
> with the crime, and identified as such."
> (Emphasis supplied).

In the case at bar the physical evidence was certainly shown to
be connected with the crime and identified as such.

The defendant's objection is to the fact that there were
no identification marks placed on the pieces of sweatshirt,
trousers, pocket and tennis shoes before they were placed in the
hands of the sheriff. After they got to the sheriff they were
marked. The State contends that no marking was necessary so long
as the State did identify these articles and demonstrate, <u>prima</u>
<u>facie</u>, that there was no substantial change in the articles while
they were in the possession of the State. As to the sweatshirt
and trousers, Warden Crist, Deputy Warden Blodgett, Lt. Atkinson
and the sheriff were all present when this clothing was taken from
the trash can. The sheriff took pictures and at that time the
deputy warden turned this evidence over to the sheriff who was
standing right there. At trial, all of these individuals said
the sweatshirt and trousers shown them at trial were the same as
those taken from the trash can. As to the pocket, it was found
by an employee of the prison in the prison sewer lagoon. This
employee testified that this was the same pocket he found. This
pocket was given by the employee to the captain of the guard in
a brown paper bag marked with the date and time. The captain
said he opened the bag and the contents had "Fitzpatrick" written
on it. The captain said he turned it over to the sheriff immedi-
ately thereafter. Further, it was stipulated that the pocket

- 12 -

found in the sewage lagoon by the witness Bill Thompson, came from the denim levis or trousers found in the trash can and could have originated from no other source. As to the shoes, they were also identified by the prison employee who found them as being the same shoes he found and that no substantial change had been made on them.

Thus, the state did identify these articles and did prove, under the rules of Wilroy and Wong Fong, that no substantial change had been made on them.

We therefore hold that the objections made to the introduction of the photos, pieces of sweatshirt, trousers, pocket and tennis shoes were without merit.

The last issue raised by defendant is that the trial court should have admitted in evidence inquiries as to the exchange of clothing by inmates.

Lt. Atkinson said he saw Fitzpatrick between 6:00 and 7:00 p.m. wearing a sweatshirt. Atkinson said he noticed the sweatshirt on Fitzpatrick because of the unusual design on the back of it. The design was of an Indian with a bow and arrow, who was shooting at a butterfly. The defendant, however, denied ever wearing this sweatshirt. Thus, the jury had two choices: to believe Fitzpatrick was wearing the sweatshirt, or believing he was not. It was up to the jury to decide who they were going to believe. If they believed the defendant's statement that he was not wearing the sweatshirt, then they could not convict him. They did not have to decide whether another inmate could have had it on, but only had to decide whether they believed Fitzpatrick who said he did not have it on, or believe Atkinson, who said that Fitzpatrick did have it on. If the jury believed Atkinson, then another inmate could necessarily not have been wearing the sweatshirt. Thus, the possibility of exchange of clothing was irrelevant.

The question for the jury was only whether the defendant had these clothes on, not whether some other inmate had them on.

The jury believed Atkinson and concluded that defendant was wearing the sweatshirt with the unusual design. As triers of fact, they were entitled to make such a conclusion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Hon. Edward T. Dussault, District
Judge, sitting in place of Mr.
Justice John C. Harrison.

We concur:

Chief Justice

Justices