No. 81-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WAYNE JOHNSON,

Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

A. Michael Salvagni, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Donald White, County Attorney, Bozeman, Montana

Submitted on Briefs: December 11, 1981

Decided: FEB 25 1982

Filed: FEB 25 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

On December 1, 1980, the defendant was charged by information with criminal mischief and arson, sections 45-6-101(1)(c) and 45-6-103(a), MCA, respectively, both felonies, in the District Court of the Eighteenth Judicial District of the State of Montana, in and for the County of Gallatin. The defendant pleaded not guilty to both charges and a jury trial was held on April 21, 22 and 23, 1981. The jury found the defendant guilty of each offense. The Honorable Joseph B. Gary sentenced the defendant to the Montana State Prison for ten years for criminal mischief and fifteen years for arson, but suspended all but two years of the sentence. The defendant appeals the conviction on both counts.

Defendant owned and operated the Coral Reef Pet Shop in Bozeman, Montana, from 1975 to May 30, 1980. The defendant leased the premises from Lovelace Realty until October 1979 when the building was converted into a condominium. Defendant did not purchase his unit. The owner of the business located next to defendant purchased the unit occupied by the pet store and assumed the lease between defendant and Lovelace Realty.

Sometime between 7:00 and 7:30 p.m. on May 22, 1980, a fire was discovered in defendant's pet store. Investigators of the fire determined it to have been intentionally set. Two Coleman fuel cans were found inside, near the rear door of the pet store. It was determined that the fire had been independently set in three separate areas of the store by the use of a petroleum product similar to, if not identical with, the Coleman fuel. Also, there was no evidence of a burglary or a break-in.

Defendant was seen by the owner of the business located next door, Richard Wike, at about 5:30 p.m. on May 22, 1980. Wike testified that the defendant partially emerged from the back door, stopped and then went back inside. Another witness, Wayne Pederson, who lived in an apartment over the pet store, testified that he saw a man in the pet store watching television between 6:00 and 6:30 p.m.

Sgt. Green of the Bozeman Police Department testified that the defendant had informed him that he and his wife had the only keys to the pet store. However, at trial it was discovered that an employee, Norma Blossom, also had a key, but she had not worked in or been to the store for several months.

Further testimony revealed that the morning after the fire, while firemen were inspecting the damage at the store, the defendant appeared and asked if he could retrieve certain business records from his desk in the front of the store. He was allowed to do so. He later told police, however, that his business records had been stored on a shelf in the rear of the store and had been destroyed by the fire. The defendant did not produce any records at trial and an inspection of the back of the store did not reveal any evidence that records had been stored there.

Wike testified that the defendant informed him the morning after the fire that the lease was ended and did not mention any plans to reopen. Testimony revealed that the defendant, after he had arrived at the scene, made no inquiry about the animals that had been in the store, nor did he search for survivors or request that arrangements be made for their remains. However, Sgt. Green testified that

the defendant did talk quite a lot about insurance and inventory.

Evidence was introduced at trial that the defendant had doubled his insurance coverage on inventory and fixtures from $25,000 to $50,000 in October 1979. After the fire, he filed a claim with his insurance company for $45,603.27 in alleged inventory and fixture loss.

There was substantial testimony that defendant's inventory level was quite low at the time of the fire. This testimony was received from a sales representative for one of the defendant's suppliers, a truckdriver who delivered supplies to the pet store and another supplier who visited the store in the spring of 1980. One witness testified that he thought the defendant was going out of business. The only testimony to the contrary came from a couple who had purchased fish five days before the fire.

The evidence further revealed that the defendant was burdened by business and personal debts. He was put on a C.O.D. basis by one of his suppliers in the fall of 1979. A judgment was obtained against the defendant by another supplier in April 1980 for $1,985.23. Also, at the time of the fire, defendant owed a third supplier $967.37 for merchandise acquired in December 1979. In addition, it was shown that the defendant owed Montana Power $190.38; $414.45 for rent on a house in Bozeman; $95.18 for rent on a house in Belgrade; $325 for rent to a former landlady in Belgrade; $800 for a television set he purchased for the store; $259 in back wages to a former employee; a substantial sum to the Bozeman clinic; $545 to a local furniture store; and he had a $14,000 unpaid bank debt.

-4-

It was brought out at trial that the defendant had misrepresented and suppressed certain information during the official investigation. He had represented to Sgt. Green, who was in charge of the investigation, that he was indebted only to Western Bank and Pendelton Enterprises, an inventory supplier from Salt Lake. Further, the defendant informed Sgt. Green that he had only two business suppliers. At trial, under cross-examination, the defendant admitted that neither representation was in fact true.

Two issues are presented for review:

1. Were there sufficient facts presented in the affidavit to allow the District Court to conclude that probable cause existed to charge the defendant with criminal mischief and arson?

2. Was the evidence sufficient to support the guilty verdicts for criminal mischief and arson?

Defendant contends that the affidavit of the deputy county attorney did not contain sufficient facts for a showing of probable cause that he, the defendant, committed either the offense of criminal mischief or arson. Defendant cites State v. Hallam (1978), 175 Mont. 492, 575 P.2d 55, as authority for this contention. The specific section of Hallam relied upon states:

> "Obtaining leave to file an information is not a mere perfunctory matter but rests in the sound discretion of the district judge. The application must be complete in itself, and contain such salient facts as will allow the district judge to make an independent determination that an offense has been committed." 575 P.2d at 59.

While the defendant is indeed partially correct in citing Hallam as authority for his position, he fails to present the requisite authority that completely defines this area of

the law.

This Court has addressed the contention presented by the defendant in several previous cases. In State v. Dunn (1970), 155 Mont. 319, 472 P.2d 288, 292, this Court held that, "[i]f the evidence contained in the affidavit is sufficient to satisfy the district judge that probable cause exists, nothing further is required." Further, in State v. Miner (1976), 169 Mont. 260, 546 P.2d 252, this Court held:

> "In determining the probability that defendant committed an offense, the guidelines suggested in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, have been noted with approval by this Court. See: State v. Troglia, 157 Mont. 22, 482 P.2d 143. Generally, those guidelines state that a mere probability is sufficient for probable cause, a prima facie showing not being necessary. Also affidavits of probable cause are subject to much less rigorous standards than the admissibility of evidence. Finally, judges reviewing such affidavits should use their common sense in determining whether probable cause exists." 546 P.2d at 254-255. (Emphasis added.)

See: State v. Hamilton (1980), ___ Mont. ___, 605 P.2d 1121, 1127, 37 St.Rep. 70, 75, for a reaffirmation of the holding in Miner.

We have reviewed the affidavit of the deputy county attorney. The affidavit contained a large array of facts that presented sufficient probable cause to warrrant the district judge to believe that the offenses of criminal mischief and arson were committed by the defendant.

The second issue presented for review is the allegation that the evidence, because of its circumstantial nature, was insufficient to support the verdicts. Defendant argues that under the standard set out in State v. Cor (1964), 144 Mont. 323, 396 P.2d 86, and State v. Fitzpatrick (1973), 163 Mont. 220, 516 P.2d 605, the State failed to

meet its burden of proof. The "standard," as alleged by the defendant is, "that to justify a conviction on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt, but must be inconsistent with any other rational (i.e., reasonable) conclusion." Fitzpatrick, 516 P.2d at 609. Again, the defendant has only presented part of the legal analysis that is required when a substantial evidence question has been raised.

This Court held in State v. Wilson (1981), ___ Mont. ____, 631 P.2d 1273, 38 St.Rep. 1040, 1047:

> "The correct test is whether there is substantial evidence supporting the conviction, viewed in the light most favorable to the State. State v. Brubaker (1981), ___ Mont. ___, 625 P.2d 78, 81, 38 St.Rep. 432, 436; State v. Azure (1979), ___ Mont. ___, 591 P.2d 1125, 1131, 36 St.Rep. 514, 520. 'Substantial evidence' is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. State v. Graves (1981), ___ Mont. ___, 622 P.2d 203, 208, 38 St.Rep. 9, 14; State v. Merseal (1975), 167 Mont. 412, 416, 538 P.2d 1366, 1368." 631 P.2d at 1278.

This Court must begin a review of the evidence with the above principles of law in mind. The fact that the defendant was convicted by the use of circumstantial evidence rather than direct evidence does not alter the process of review. State v. Cor (1964), 144 Mont. 323, 396 P.2d 86; State v. Stoddard (1966), 147 Mont. 402, 408, 412 P.2d 827, 831. While a conviction based upon circumstantial evidence may require a greater degree of scrutiny by this Court, circumstantial evidence does not require a separate or unique test as the defendant contends that it does.

The standard that was cited by the defendant from Cor and Fitzpatrick was not the full standard of review that is

to be applied to verdicts based primarily upon circumstantial evidence. In Cor, 396 P.2d at 88-89, this Court held:

"Circumstantial evidence is not always inferior in quality nor is it necessarily relegated to a 'second class status' in the consideration to be given it. The very fact it is circumstantial is not a sufficient allegation to justify a reversal of the judgment for such evidence may be and frequently is, most convincing and satisfactory. In any criminal case, evidence that is material, relevant and competent will be admitted, 'nothing more and nothing less.' The test is whether the facts and circumstances are of such a quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt. If such be the case, then the court should not, indeed cannot, set aside the solemn findings of the trier of the facts. State v. Espelin, 106 Mont. 231, 76 P.2d 629; State v. DeTonancour, 112 Mont. 94, 112 P.2d 1065." (Emphasis added.)

See: State v. Shurtliff (1981), ___ Mont. ___, 635 P.2d 1294, 38 St.Rep. 1798; State v. Stoddard, supra, 412 P.2d at 831.

Further, in State v. Seitzinger (1979), ___ Mont. ___, 589 P.2d 655, 36 St.Rep. 122, we stated:

"Given the first explanation, defendant cites State v. Fitzpatrick (1973), 163 Mont. 220, 516 P.2d 605, as holding that to support a criminal conviction the evidence must not only be consistent with defendant's guilt but also inconsistent with his innocence. Defendant's reading of the case is not quite complete. In Fitzpatrick, the Court went on to say that the jury is the fact-finding body in our legal system and is free to pick and choose the evidence it wishes to believe. State v. Fitzpatrick, supra at 226, 516 P.2d at 609." 589 P.2d at 658.

Here, the jury determined from all the evidence presented, circumstantial though it may have been, that the defendant was guilty of criminal mischief and arson. The argument by defendant that there were other "rational (i.e., reasonable)" explanations of the evidence presented is

-8-

without merit. The jury did not conclude from the evidence that there was any other reasonable explanation for the evidence, and we will not second guess the jury.

In the past this Court reviewed the evidence from an arson case, State v. Murdock (1972), 160 Mont. 95, 500 P.2d 387, that was quite similar to that presented here. When reviewing the evidence, we stated:

> "To be sure the evidence is circumstantial, as in most arson cases. Nobody saw defendant start the fire or saw him prepare the premises for the fire that resulted. But the evidence does show that: defendant was the sole occupant of the house; he had the only keys to the house; there were no signs of forced entry into the house; the house was prepared for a fire by jamming the safety devices and electrical circuit in the furnace with oily rages leading to containers filled with volatile liquids; gasoline, propane, and other flammable materials were placed on the floor directly above the furnace; the thermostat was set to fire the furnace in the early morning hours when the temperature on the inside of the house fell below 75 degrees; the rugs in the house were soaked with oil; the furnace had manually been tampered with to cause it to malfunction and emit a continuous flow of oil when it turned on; and defendant, to the exclusion of anyone else, had both the motive and opportunity to burn the house down. Such circumstantial evidence is sufficient to establish that defendant caused the fire." 500 P.2d at 392.

A review of the evidence in this case parallels quite closely with the evidence in Murdock. Here, as in Murdock, the defendant was not seen starting the fire. However, as in Murdock, the defendant controlled the keys to the premises; there were no signs of forced entry; flammable materials were placed on the floor; and the defendant, to the exclusion of anyone else, had both the motive and opportunity to burn the store. In addition to the above evidence, there was further evidence presented to support the jury's findings. This evidence includes the fact that

-9-

defendant had doubled his insurance six months before the fire and at the same time reduced his inventory; he was seen at the pet store shortly before the fire; he was heavily indebted and his business showed signs of severe financial stress; and, there were a number of untruths told by defendant to the investigating officers.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices