No. 84-447

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JOHN MARK OMAN,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephen C. Pohl, Bozeman, Montana


    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        A. Michael Salvagni, County Attorney, Bozeman,
        Montana

_____

Submitted on briefs: July 25, 1985

Decided: October 15, 1985

OCT 15 1985

Filed:

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendant, John Mark Oman, was convicted in the District Court, Eighteenth Judicial District, County of Gallatin, on May 31, 1984, of felony assault. He was sentenced on June 21, 1984, to a three-year deferred imposition of sentence and 60 days in jail on work release with credit for time served. The defendant appeals from his conviction.

We affirm.

The defendant raises two issues for our review:

1. That the District Court erred in granting the prosecution's motion in limine to prohibit testimony regarding previous civil child protective actions involving the minor child, Crystal Simmons; and

2. That the jury's verdict was not supported by substantial credible evidence.

In January 1984, Cindy Simmons and her daughter, Crystal Simmons, were living in the home of defendant, Mark Oman. On January 16, 1984, Cindy Simmons sought shelter for herself and her child in the Gallatin County Battered Women's Shelter. When Simmons went to the shelter, and on several occasions immediately thereafter, she told several persons that Oman had hit both her and her 14-month-old daughter in the face. At the shelter several people, who testified at the trial, personally observed that both Cindy and her child had swollen lips and mouths as a result of the blows she attributed to Oman.

On January 27, 1984, Cindy Simmons went to the Gallatin County Sheriff's Office and made a statement against Oman. Thereafter, Oman was arrested, charged with misdemeanor and

felony assault in violation of § 45-5-201(1)(a), M.C.A. On February 21, 1984, Oman entered pleas of not guilty to both counts of the information. On May 21, 1984, upon motion of the State, the charge of misdemeanor assault against Oman was dismissed because Simmons recanted her story. The State, however, proceeded to trial on May 31, 1984, with respect to the felony assault charge.

At trial Simmons testified that her statement to the Sheriff's Department was false and that the events she described in the statement never occurred. Simmons testified that by January 16, 1984, she had become very angry with Oman and wanted to move out of his home, but had no money of her own, no place to go and no relatives in town with whom she could stay. As a result, Simmons contacted Bozeman's Help Center and was given the name of the Battered Women's Network. By reasons of her report that she had suffered physical violence in her home, Simmons was allowed to stay at the shelter free of charge.

At the same time Simmons was admitted to the Shelter for lodging, she was counseling with a Gallatin County social worker. Simmons testified that the counsellor threatened her that if she did not pursue an assault charge against Oman, she would be sent to Boulder or Warm Springs and her daughter, Crystal, would be taken away from her and put up for adoption. Simmons also testified that she informed the counsellor that what she had told the shelter about being struck by Oman was not true and that the counsellor had insisted she continue her story and further it by telling it to the police. At the trial, the counsellor denied making any such statements.

Simmons accounted for her daughter's injured lip by testifying that the injury occurred a couple of days prior to January 16, 1984, while Crystal was with the church babysitter. Simmons' explanation for her own injured lip was that it was caused while rough-housing with a friend, Eric Ayers.

Prior to trial, the prosecution presented a motion in limine to prevent Oman's counsel from offering testimony regarding civil court proceedings for child protective actions. The District Court granted the motion in limine. The civil proceeding which the motion in limine referred to was a child protective action filed by the Gallatin County Welfare Department in 1983 seeking the permanent removal of Crystal Simmons from the home of her natural parents, Cindy and Don Simmons, and seeking to terminate their parental rights. The case was heard and Crystal was returned to her parents in December 1983.

Issue No. 1. Did the District Court err in Granting the Prosecution's Motion in Limine.

Oman's contention on this issue is that there was a proceeding that unsuccessfully sought to remove Crystal Simmons from her mother's custody and this was highly relevant to show that Cindy Simmons pressed charges against Oman only out of fear that her daughter would still be taken from her. Oman argues that such evidence was highly relevant to the issue of his guilt or innocence in that it would have helped the jury understand Cindy Simmons' primary motive for her reporting that Oman had assaulted her and her daughter, and why she then changed her story at trial. In granting the motion in limine the trial judge determined the subject matter of the prior child protective actions was 1) not

- 4 -

relevant and 2) its introduction would only serve to confuse the issues.

It is well settled that the trial judge has latitude of discretion in passing on the admissibility of evidence. State v. Gray (Mont. 1983), 659 P.2d 255, 257, 40 St. Rep. 199, 202; State v. Pendergrass (1978), 179 Mont. 106, 112, 586 P.2d 691, 694; State v. Rollins (1967), 149 Mont. 481, 484, 428 P.2d 462, 464. The trial judge's determination of the admissibility of evidence is subject to review only for abuse of discretion. State v. Stokes (1981), 195 Mont. 321, 325, 637 P.2d 498, 500; State v. Medicine Bull (1968), 152 Mont. 34, 45, 445 P.2d 916, 922. Rule 402 of the Montana Rules of Evidence states in pertinent part: "Evidence which is not irrelevant is not admissible."

Rule 401 of the Montana Rules of Evidence defines relevant evidence in the following manner:

> Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant.

The test of relevance is whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. State v. Fitzpatrick (1980), 186 Mont. 187, 207, 606 P.2d 1343, 1353. Generally, whatever naturally and logically tends to establish a fact in issue is relevant, and that which fails to qualify in this respect is not relevant. Monaco v. Cecconi (1979), 180 Mont. 111, 119, 589 P.2d 156, 161; Brion v. Brown (1959), 135 Mont. 356, 363, 340 P.2d 539, 543. The District Court has broad discretion to determine whether or not the evidence is relevant. Without a showing that the

- 5 -

District Court has abused its discretion, this Court will not overturn the District Court's determination of relevancy. McConnell-Cherwick v. Cherwick (1983), 666 P.2d 742, 744, 40 St.Rep. 1106, 1108; State v. Close (Mont. 1981), 623 P.2d 940, 948, 38 St.Rep. 177, 187.

We find no evidence in the record to indicate that the District Court abused its discretion in determining the offered evidence was irrelevant.

Having determined that the trial court judge's exclusion of testimony regarding the prior child protective actions was proper, the other matters that Oman raised with respect to the application of § 41-3-205, MCA, regarding confidentiality of the prior child protective actions, and his Sixth Amendment right to confront witnesses need not be considered.

Issue No. 2: Was the jury's verdict supported by substantial credible evidence.

The test applied by this Court where sufficiency of the evidence is an issue on appeal in a criminal case, whether the trial is by jury or not, is the substantial evidence test. This test is met if a reasonable mind would accept the evidence as supporting the conclusion reached. In applying this test the evidence is viewed in a light most favorable to the prevailing party. The weight of the evidence and the credibility of the witnesses is exclusively the province of the trier of fact. If the evidence conflicts, it is within the province of the trier of fact to determine which shall prevail. See, State v. Berklund (Mont. 1984), ___ P.2d ___, 42 St.Rep. 1147, 1149; State v. Green (Mont. 1984), 685 P.2d 370, 371-372, 41 St.Rep. 1562, 1564; State v. Johnson (1984), 197 Mont. 122, 127, 641 P.2d 462, 465. If the substantial evidence test is not met, this Court will set the verdict or

judgment aside. Berklund, ___ P.2d at ___, 42 St.Rep. at 1149; State v. Merseal (1975), 167 P.2d 410, 415, 538 P.2d 1366, 1368. In addition, the judgment will be disturbed when the evidence is so inherently incredible that no reasonable person ought to accept it as true. State v. Radi (1978), 176 Mont. 451, 461, 578 P.2d 1169, 1176; State v. Crockett (1966), 148 Mont. 402, 407, 421 P.2d 722, 724-725.

We hold that there is sufficient evidence to support the jury verdict. Despite Simmons' testimony at the trial contradicting her previous statements, there was relevant evidence that a reasonable mind would accept as adequate to support the jury's finding that defendant was guilty as charged. Evidence showed that in January 1984, Cindy Simmons and her daughter, Crystal, were living in the home of Oman. By January 1984, the relationship between Simmons and defendant had eroded significantly. On January 16, 1984, Simmons sought shelter for herself and her child in the Gallatin County Battered Women's Shelter. At the Shelter and immediately thereafter, Simmons told several persons she and her daughter had been violently beaten by Oman. Also when Simmons appeared at the Shelter with her daughter, they both had swollen lips and mouths from the beatings Simmons attributed to Oman. On January 27, 1984, Cindy Simmons went to the Gallatin County Sheriff's Office and made a statement against Oman for the beating.

We affirm.

_____
Justice

We Concur:

- 7 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices