No. 81-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

       Plaintiff and Respondent,

    -vs-

SIDNEY MILES STOKES,

       Defendant and Appellant.


Appeal from: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Herron, Meloy and Llewellyn, Helena, Montana


    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Charles Graveley, County Attorney, Helena, Montana


Submitted on briefs: August 21, 1981

Decided: November 12, 1981

Filed: NOV 12 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant, Sidney Miles Stokes, was convicted on January 14, 1981, of robbery, theft, aggravated assault and aggravated burglary. He was sentenced on March 13, 1981, by the First Judicial District Court, to ten years on each of the four counts, to run concurrently. Five years on each count were suspended. The defendant appeals from his conviction on all four counts.

At approximately 8:45 a.m. on November 25, 1980, Caroly Kelly and Fred Ketron surprised a man who was burglarizing Kelly's residence on Van Orsdal Road in the Helena Valley. The burglar's lower face was covered with a pillow case. He forced Kelly and Ketron at gunpoint to lie on the floor and covered the two with blankets. The burglar repeatedly told the two if they looked at him he would kill them. He continued with the theft of items from the residence. After he departed the Lewis and Clark County Sheriff's Department was summoned.

The two victims and a next door neighbor, Jewel Hurley, who had noticed an unusual-looking stranger in front of the house on the morning of the crime, were requested by the sheriff's office to view photographs contained in mug shot books in an attempt to identify the individual. The viewings were conducted separately and within a few days following the burglary. Kelly, Hurley, and Ketron did not discuss with each other, their attendance at these photographic displays.

All three identified the defendant as the person seen on November 25, 1980. The three identifications were made from a mug shot book containing several hundred photographs of different individuals. The defendant's photographs were contained in the book as a result of previous DWI arrests.

No lineup was ever conducted. The defendant testified that he requested a lineup from the sheriff's department. The

county attorney's office contended that no such request was ever transmitted to it.

Prior to trial, the defendant made a motion in limine to exclude evidence or references to the fact that the defendant had previously been arrested, charged, or convicted of other crimes. The defendant's motion made specific references to the booking photographs of the defendant which had been identified by Ketron, Kelly, and Hurley.

The District Court denied the motion in limine but agreed to give a cautionary instruction to the jury concerning the photographs of the defendant.

At trial, the State introduced the photographs of the defendant. Ketron, Kelly, and Hurley also made in-court identifications of the defendant. The identifications of the mug shots of defendant and the in-court identifications of defendant comprised all of the evidence submitted by the State, connecting defendant with the burglary.

The defendant relied on an alibi defense, claiming he had been at his mother's house on the other side of town at the time of the burglary. The defendant's mother, brother, wife and a friend testified on his behalf.

At the conclusion of the trial, the defendant submitted two proposed instructions concerning eyewitness testimony. The District Court refused one as being redundant in light of other instructions. The refused instruction related eyewitness testimony to the witness's ability to observe the event.

The jury returned a verdict of guilty on all four counts.

The following issues are presented on appeal:

1). Whether the District Court abused its discretion by failing to exclude the mug shot photographs?

2). Whether the District Court abused its discretion by allowing an in-court identification of defendant?

3). Whether the District Court abused its discretion by

refusing the defendant's instruction relating eyewitness testimony to the witness's ability to observe the event?

4). Whether the District Court erred in denying the defendant's motion for directed verdict?

Defendant first contends that allowing the DWI booking photographs of the defendant to go to the jury, necessarily prejudiced the jury because those photographs implied that defendant had committed prior criminal acts. The defendant does not contend that the identifications made by the eyewitnesses using the photographs were tainted or made under suggestive circumstances; only that the mug shots created a prejudicial effect on the jury that could not be erased.

Defendant relies on Rules 404(b) and 609, Mont.R.Evid. in support of his contention. Rule 609, Mont.R.Evid. provides that "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is not admissible." This rule is clearly inapplicable to the defendant's situation. The booking photographs are not evidence of convictions; they merely indicate that the defendant was booked on prior occasions. Secondly, the photographs were introduced for purposes of identification. No evidence was adduced by the State at trial indicating that the defendant had ever been convicted of any crime, nor was such suggestion made during trial. Therefore the photographs were not used to attack the credibility of the defendant.

Rule 404(b), Mont.R.Evid. provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity . . . ."

This evidentiary rule must be viewed in conjunction with Rule 403, Mont.R.Evid. which states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

In the instant case, the very issue before the jury was identification of the defendant. As a result the photographs used by the eyewitnesses to identify the defendant were relevant evidence. Therefore, the District Court was faced with a determination of whether the photographs, necessary for purposes of identification, were unfairly prejudicial.

It is well-settled in Montana that " . . . the question of admissibility of . . . evidence must in every case be left largely to the sound legal discretion of the trial court, subject to review only in case of manifest abuse." State v. Medicine Bull (1968), 152 Mont. 34, 45, 445 P.2d 916, 922. In the instant case, the District Court chose to allow the photographs to go to the jury, coupled with the following cautionary instruction:

> "The fact, as it appears in evidence, that the defendant was arrested and photographed in connection with a charge not related in any way to this case is not to be considered by you as evidence of his guilt in this case, nor is such fact to be considered by you as evidence of the defendant's credibility."

Additionally, the fact that the photographs stemmed from DWI charges was presented to the jury by the defendant. Under these circumstances it is impossible for this Court to say that the admission of these photographs constitutes "a case of manifest abuse." Whatever prejudicial effect was created by the photographs was negated by the cautionary instruction and the explanation of the background of the photographs.

Defendant's second issue stems from the in-court identifications of the defendant made by the State's eyewitnesses, Fred Ketron, Caroly Kelly, and Jewel Hurley. Counsel for the defendant objected to the in-court identifications on the basis that no one other than the defendant was in the courtroom and that several months had passed since the burglary. The District Court permitted the identifications, ruling that defendant's objections went to the weight of the evidence, not to its admissibility.

- 5 -

With regard to potentially tainted out-of-court photo lineup identifications, this Court has stated that:

> " . . . unless the error is obvious and the prejudice clear, the defendant's remedy is in effective cross-examination with the identification question then becoming one of weight to be determined by the jury and not one of admissibility." State v. Miner (1976), 169 Mont. 260, 266, 546 P.2d 252, 256.

This standard is equally applicable to the instant situation involving an in-court identification with no claim of taint or suggestiveness in the underlying out-of-court photo identification. Therefore the District Court ruled correctly and committed no error.

The line of cases cited by defendant mandating a review of "the totality of the circumstances" surrounding the in-court identification to determine if the proffered in-court identifications "possess sufficient aspects of reliability" applies only where a suggestive or tainted out-of-court identification has occurred. Such is not the case here and the defendant's argument, although novel, is inapplicable.

Defendant next asserts that the District Court erred by refusing to give the following proposed instruction:

> "Instruction No. 13. Every person who testifies under oath or affirmation is a witness. You are the sole judges of the believabiity of a witness and the weight to be given to his testimony.
>
> "In determining the believability of a witness you may consider anything that has a tendency in reason to prove or disprove the truthfulness of his testimony, including but not limited to the extent of his opportunity and ability to see any matter about which he testifies."

The defendant contends that the above instruction must be given in conjunction with his instruction regarding eyewitness identification and guilt beyond a reasonable doubt, which was given by the District Court as Instruction No. 16.

However, the District Court determined that defendant's proposed Instruction No. 13 was substantially given in Instruction No. 1 which read in pertinent part:

" . . .

"You are the sole judges of the credibility of all the witnesses who will testify in this case, and of the weight to be given their testimony.

"A witness is presumed to speak the truth; but this presumption may be repelled by the manner in which he testifies, by the nature of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence. In determining the weight to be given to the testimony of any witness, you have a right to consider the appearance of each witness on the stand, his manner of testifying, his apparent candor or lack of candor, his apparent fairness or lack of fairness, his apparent intelligence or lack of intelligence, his knowledge and means of knowledge on the subject upon which he testifies, together with all the other circumstances appearing in evidence on the trial." (Emphasis added.)

After reviewing the instructions at issue here, this Court agrees with the District Court; defendant's proposed instruction No. 13 is substantially covered by Instruction No. 1. This Court has stated many times that the refusal to give instructions on the same subject is not prejudicial error. State v. Sullivan (1979), ____Mont.____, 595 P.2d 372, 36 St.Rep. 936.

Finally, defendant argues that the District Court erred in not granting his motion for a directed verdict, because there was a lack of evidence to go to the jury. The defendant contends that the eyewitness testimony presented by Ketron, Kelly, and Hurley was insufficient to take the case to the jury.

This Court recently stated the grounds on which a motion for a directed verdict should be granted:

"A directed verdict in a criminal case is granted . . . only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict." State v. Fitzpatrick (1980), ____Mont.____, 606 P.2d 1343, 1356, 37 St.Rep. 194, 209.

In the defendant's case, three people testified to either seeing the defendant at or around the scene of the burglary. These three witnesses separately selected defendant's photograph from a group of several hundred pictures. All three later identified the defendant in court as either being positively the

- 7 -

individual who committed the burglary or as having all the characteristics of the person observed at the crime scene.

Absent a tainted or suggestive identification procedure, which is not the case here, this eyewitness testimony places defendant at the scene of the crime prior to the burglary and also identifies him as the individual committing the offense. Such evidence, although subject to jury evaluation, would if believed by the jury, be sufficient on which to base a verdict. The District Court properly denied the motion for a directed verdict.

The conviction of the defendant is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices