No. 84-276

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN LYNN LUCERO,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. Adams, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana
Klaus Richter, Deputy County Atty., Billings, Montana

---

Submitted on Briefs: Nov. 2, 1984

Decided: December 31, 1984

Filed: DEC 31 1984

*Ethel M. Harrison*

—————————————————
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant John L. Lucero appeals from a judgment of conviction for burglary, § 45-6-204, MCA, in the District Court, Thirteenth Judicial District, Yellowstone County. Lucero was convicted in a trial by a jury and sentenced to ten years in the Montana State Prison with two years suspended.

Sometime between the hours of 8:30 p.m. on October 23, 1983 and 7:00 a.m. on October 24, 1983, Kon's Supermarket located at 708 Broadwater Street, Billings, Montana, was entered by someone through a trap door on the roof of the building. A safe that had been imbedded in concrete and which contained approximately $7,000 in cash, $17,000 in checks and $1,000 in green stamps was forcibly uprooted and removed through the back door of the premises. The manager, Gordon McCann, arrived at 7:00 a.m., noticed that the Courtesy Counter where the safe had been located was in shambles and summoned the police. Officers found three cans of beef jerky in the area of the Courtesy Counter; one can had been partially emptied and was located on a shelf inside the counter. The other two cans were in the area unopened. Detectives lifted fingerprints from all three cans but could only positively identify two thumbprints from the opened can. These thumbprints matched those of defendant-appellant Lucero. No other fingerprint matching Lucero's or any other suspicious fingerprints were found by the police during their investigation.

From September 17, 1983 to October 6, 1983, John Lucero worked for George Maddox who operated a janitorial service

that was under contract to clean Kon's Supermarket. Lucero worked at the Kon's store on Broadwater Street and had occasion to be in the vicinity of the beef jerky display while at work. Maddox fired Lucero on October 6, 1983, about 17 days before the break-in, because his work performance was unsatisfactory.

Based on the fingerprint evidence, Lucero was arrested, charged, and brought to trial on January 30, 1984. The jury returned a verdict of guilty and Lucero was sentenced to a term of 10 years in prison with two years suspended.

From inside the prison walls Lucero personally filed a notice of appeal, and a motion to proceed in forma pauperis. Judge Barz granted leave to proceed in forma pauperis. Because the appellant had become dissatisfied with his trial counsel, Allen Beck, the court appointed John L. Adams to represent Lucero on appeal.

Appellant raises five issues in his notice of appeal.

(1) Whether the judgment of conviction is void for insufficient evidence to sustain the verdict where, as here, the circumstantial evidence does not exclude every reasonable hypothesis other than guilt?

(2) Whether prosecutorial suppression of material evidence favorable to the accused invalidates the judgment of conviction?

(3) Whether the accused was deprived of his right to a fair trial based on cumulative error?

(4) Whether judgment of conviction was obtained in violation of the right of the accused to effective counsel where, as here, defense counsel neither investigated nor developed the affirmative defenses interposed by the accused to counsel before trial and defense counsel consistently

committed shockingly prejudicial errors against the accused at trial?

(5) Whether the District Court erred as a matter of law by its improper instructions given to the jury and by its failure to fairly and properly instruct the jury?

Appellant's counsel deemed appellant's first four issues to be without merit and did not argue them in his brief. Appellant in his brief concentrated his argument on the fifth issue which concerns the instructions to the jury. The State only responded to that argument.

We consider five points of claimed error in the notice of appeal even though appellant's appointed counsel did not argue four of them. Although we do not find that any of appellant's first four points of error can be sustained, we respect appellant's right in this case to raise such issues.

Appellant contends that there was insufficient evidence as a matter of law to convict him. The law concerning questions of sufficiency of evidence is settled in Montana and is aptly expressed in the following quote:

"As this Court has held many times over, the jury is the fact finding body in our system of jurisprudence, and its decision is controlling. The jury is free to consider all the evidence presented and to pick and choose which of the witnesses it wishes to believe. If sufficient testimony was introduced, as well as exhibits to justify the jury's findings, then its conclusions will not be disturbed unless it is apparent there was a clear misunderstanding by the jury or that there was a misrepresentation made to the jury."

State v. Swazio (1977), 173 Mont. 440, 445, 568 P.2d 124, 127; State v. Fitzpatrick (1973), 163 Mont. 220, 226, 516 P.2d 605, 609.

The jury may pick and choose between contradictory testimony or other evidence in reaching its conclusion. In this case there was no direct conflict in the evidence but a

question of inferences to be drawn from the circumstantial evidence presented. The State's case hinged on the fact that two of defendant's thumbprints were found on one can of beef jerky left at the scene. Evidence was presented that tended to show that it was unlikely but not impossible that the defendant's fingerprints were placed on that particular can of beef jerky while defendant worked as a janitor in the store approximately 17 days before the break-in.

We stated in Fitzpatrick, supra, that to justify a conviction in a case based solely on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt, but must be inconsistent with any other rational (reasonable) conclusion. 163 Mont. 220, 225, 516 P.2d 605, 609.

Defendant's proposed jury instruction no. 2 was given by the court as instruction no. 15. This instruction was an accurate statement of the law as we set forth in Fitzpatrick. It correctly stated that if the circumstantial evidence was susceptible to two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is the duty of the jury to adopt the interpretation which points to the defendant's innocence and reject that interpretation which points to his guilt. We must decide as a matter of law whether the jury totally misunderstood this instruction or whether they acted consistently with it.

From the evidence presented it is consistent for the jury to have inferred that the defendant's thumbprints were left on the can of beef jerky during the night of burglary. The jury could have then concluded that the defendant had illegally entered the store with the intent to commit a

- 5 -

criminal offense therein.  The circumstantial evidence is consistent with the prosecution's theory of guilt.

The evidence is not inconsistent with the theory that Appellant's thumbprints were left on the can of beef jerky when he picked up the can in question during his employment as a custodian.  The question arises whether this is a reasonable conclusion.  We think it was within the province of the jury to conclude it was not reasonable.

Mr. Kraft, the meat manager at Kon's, testified that he restocked the beef jerky display twice, once on the 8th of October and once on the 15th of October, 1983.  He stated that he put out a case (24 cans) of beef jerky each time he stocked the display.  The evidence tended to show that Lucero would only have had reason to touch a can of beef jerky if he disturbed the display while cleaning.  There was no affirmative evidence offered as to whether Lucero did in fact touch a can or cans of beef jerky during the course of his employment or at any other time.  We conclude that the jury did not as a matter of law err in concluding that the defendant's interpretation of the circumstantial evidence was not a reasonable one.

Appellant contends that the prosecution suppressed material evidence favorable to the accused.  We have searched the record and find no evidence that anything was suppressed. It appears that both sides were able to adequately present their evidence and theory of the case at trial.

Appellant contends that his conviction should be reversed based on cumulative error.  Appellant does not point to any instances of harmless error that could accumulate to produce sufficient prejudice to warrant reversal.

Appellant's contention that he was not represented by effective counsel at trial is without merit. We have searched the record and are satisfied that Mr. Beck presented an adequate defense. Counsel clearly presented appellant's theory of the case. His cross-examination of prosecution witnesses was aimed at eliciting discrepancies in their testimony and drawing out evidence favorable to his client. Appellant Lucero chose not to testify in his own behalf. Such is his right. Counsel did not coerce the appellant to make this election. Nowhere has it been shown that counsel for the appellant acted in such a manner as to deprive the appellant of a fair trial.

Appellant contends the District Court gave the jury an erroneous and clearly prejudicial instruction on the meaning of "reasonable doubt." Defense counsel objected to the instruction on the grounds that it was ambiguous and confusing and it impermissibly shifted the burden of proof to the appellant. Appellant alleges that instruction no. 6 as given states the only way a reasonable doubt can be found in the minds of the jury is if the doubt has foundation in fact or testimony in evidence. Appellant contends the instruction should clearly state that a reasonable doubt can arise from lack of testimony or lack of evidence. Instruction no. 6 follows:

> "You are instructed that the doubt which a juror is allowed to retain in his mind and under the influence of which he should form a verdict of not guilty, must always be a reasonable one.

> "A reasonable doubt is not such a doubt as a man may start by questioning for the sake of a doubt, nor a doubt suggested or surmised without foundation in the facts or testimony. It is such doubt as in a fair, reasonable effort to reach a conclusion upon the evidence, using the mind in the same manner as in other matters of the highest and gravest importance, prevents the jury from coming

to a conclusion in which their minds rest satisfied.

"If, in so using the mind and considering all the evidence produced, it leads to a conclusion which satisfied the judgment and leaves upon the mind a settled conviction of the truth of the fact, it is the duty of the jury to declare the fact by their verdict.

"It is possible always to question any conclusion derived from testimony, but such questioning is not what is a reasonable doubt. A reasonable doubt exists in that state of the case which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge.

"A doubt produced by undue sensibility in the mind of any juror, in view of the consequences of his verdict, is not a reasonable one, and a juror is not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to a possible state of facts differing from that established by the evidence.

"Simply stated, a reasonable doubt is a doubt for which there is a reason and the reason must be founded upon the evidence received in the course of the trial and not from any other source."

The State contends that because appellant did not submit a jury instruction defining "reasonable doubt" he should be barred from complaining about the State's instruction that was given by the court. That rule applies, however, only when the court fails to instruct on a point of law. Rule 51, M.R.Civ.P. The appellant clearly voiced his objection to the instruction and stated his reasons with particularity. The court, nonetheless, overruled the objection and made no effort to strike, clarify or alter the instruction in response to appellant's objection. We find that the appellant preserved his assignment of error. Rule 51, M.R.Civ.P.

The State argues that although instruction no. 6 did not specifically mention that a reasonable doubt could arise from

- 8 -

a lack of evidence the idea is implicit in the instruction. Common sense reveals the message intended by the instruction. The State further contends that the cumulative effect of all the jury instructions clearly conveys the legal meaning of reasonable doubt. We disagree.

The jury instructions to which the State refers do not clarify the meaning of "reasonable doubt." Instruction nos. 4, 5, 9, and 15 merely mention that the State has the burden of proving the elements of the crime beyond a reasonable doubt.

These instructions by their terms solicit reference to instruction no. 6. The jury may have focused on instruction no. 6 in order to apply the meaning of "reasonable doubt" contained in the other jury instructions.

Due process constitutionally mandates that the guilt of the accused be proven beyond a reasonable doubt. In Re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

An ambiguous, erroneous or misleading jury instruction defining reasonable doubt would deprive the accused of his constitutional right to due process. See State v. Berberick (1909), 38 Mont. 423, 100 P. 209.

Some states expressly disapprove of giving any instruction that attempts to define reasonable doubt. They consider the term "reasonable doubt" is clearly expressed by the term itself, and attempts to elaborate on its plain meaning tend to mislead and confuse. See Parnell v. State (Okla. 1982), 640 P.2d 568; State v. Douglas (1982), 640 P.2d 1259; Bentley v. State (Wyo. 1972), 502 P.2d 203.

Oklahoma has held it is reversible error to give any instruction defining reasonable doubt, Parnell, supra; Fellows v. State (Okla. 1973), 508 P.2d 1089. In the other

cases cited above, after expressing disapproval, the Courts determined whether the instruction was misleading.

In the past, Montana courts have given an instruction defining reasonable doubt. See Territory of Montana v. McAndrews (1878), 3 Mont. 158; State v. Zorn (1935), 99 Mont. 63, 41 P.2d 513; State v. Phillips (1953), 127 Mont. 395, 264 P.2d 1009.

An instruction on reasonable doubt similar to the one we are here considering was approved by this Court in State v. DeLea (1908), 36 Mont. 531, 98 P. 814. Justice Henry C. Smith commented however, on the impossibility of satisfactorily defining "reasonable doubt," perhaps because the words were so "ordinary and simple." He contended the instruction was so laborious and technical that it really confused a jury, conveyed to them the feeling that common-sense words were twisted by the law into technicalities, and led to verdicts which jurors would later blame, saying, "It was the only thing we could do under the charge of the court."

We are convinced that the definition of reasonable doubt given in past cases and the instruction given here do not help clarify the State's burden of proof but have a tendency to confuse the jury. The well-crafted arguments of counsel in this case further demonstrate that analysis of the instruction is primarily an exercise in semantics. This exercise invites appeal and does not serve the interests of justice.

Recently, this Court received from the Commission on District Courts a set of pattern jury instructions which the Commission recommended for use in criminal cases in this State. Its general instruction no. 1-004 contained a

definition of reasonable doubt. We suggest for use in future criminal cases that instruction and no further elaboration of the definition would be needed. The pertinent part of the pattern instruction follows:

> "3. The State of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt.

> "4. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would rely and act upon it in the most important of his own affairs. Beyond a reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt."

We believe the instruction given in the present case was misleading because the jury was instructed that a reasonable doubt could only be surmised from the evidence or testimony presented at trial and not from any other source. A lawyer or one trained in the law may recognize that a lack of evidence or an insufficiency of evidence presented at trial may give use to a reasonable doubt but a juror relying on the letter of this instruction may not. The effect of a jury instruction is determined by the way in which a reasonable juror could have interpreted it, not by the state courts' interpretation of its legal import. Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. The jury could reasonably interpret the instruction to mean that affirmative evidence supporting the appellant's innocence was required as the basis for a reasonable doubt. The effect is to shift the burden of proof to the appellant and such is not constitutionally permissible.

In light of the quantum of evidence presented against the appellant in this case we hold that instruction no. 6 deprived the appellant of his right to due process under the

- 11 -

law.  We reverse the conviction of the appellant and remand
to the District Court for a new trial.  Reversed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

Court's instruction no. 6, defining reasonable doubt, now disapproved by the majority, was, in substance, formulated by Chief Justice Shaw of the Supreme Court of Massachusetts in the case of Commonwealth v. Webster (1850), 5 Cush. 295, 52 Am.Dec 711.

The pertinent language of instruction no. 6, now found to be offensive, was set forth word for word, and approved, in Territory of Montana v.McAndrews (1878), 3 Mont. 158.

In the case of State v. De Lea (1908), 36 Mont. 531, 93 P. 814, the appellant made precisely the same attack used by appellant here on the same language and this Court affirmed the use of the instruction with the following comment:

> "[A doubt] always does, and of necessity must, arise from a want of evidence, by which we mean a want of sufficient evidence; for in every criminal case where there is a plea of not guilty, if the state does not introduce any evidence, the question of a reasonable doubt never arises; for there is not a court in the land but what under those circumstances would peremptorily direct a verdict of not guilty. But, if the state does offer evidence sufficient in the judgment of the trial court to go to the jury, then the jurors under their oaths must consider such evidence, and such evidence alone, in determining whether the safeguard erected by the presumption of innocence has been completely destroyed. It is completely destroyed when, and only when, the jurors can say from the evidence introduced that they feel an abiding conviction to a moral certainty of the truth of the charge against the accused. If the evidence leads to a conclusion which satisfies the judgment of the jurors, and leaves upon their minds a settled conviction of the truth of the charge, it is then their duty to so declare by their verdict. But in every such contested case their consideration is directed to the evidence

13

introduced, and from that evidence they must say whether they still retain a reasonable doubt of the guilt of the accused. It is in this sense that it is said that a reasonable doubt is not a doubt suggested or surmised without foundation in facts or testimony. In other words, the jurors may not predicate a doubt upon street rumor, or facts not in evidence, nor upon theories outside of the record, which may be suggested by the ingenuity of counsel, or upon a merciful inclination to permit the accused to escape, prompted by sympathy for him in his apparently unequal contest with the state." 36 Mont. at 540.

I would affirm the trial court on the authority of State v. De Lea, supra, but as a second basis for affirmance, I note that the appellant failed to offer an alternative instruction on "reasonable doubt." In State v. Schleining (1965), 146 Mont. 1,13, 403 P.2d 625, 632, this Court stated:

"[I]t is well-settled in this state that if a party is not satisfied with an instruction or instructions proposed to be given, he must submit an instruction which more fully covers the particular matter, or he cannot be heard to complain, unless the instruction given is inherently wrong." (Citations omitted.)

The fact that instruction no. 6 has been relied upon by the trial courts of this state for seventy-six years since the same attack was heard and rejected by this Court, leads me to believe that the instruction as given was not "inherently wrong," and, therefore the appellant should be precluded from alleging prejudicial error where he failed to offer an alternative instruction.

Regarding the effect of instruction no. 6, it is my view that if the jury, after reading all the instructions together, and considering all the evidence, determined that the State had failed to produce enough evidence to meet its burden, they would have concluded that there was a reasonable

14

doubt as to defendant's guilt, and would have returned a verdict of "not guilty."

It seems clear that the jury was not misled into believing that somehow the burden of proof shifted from the State to the defendant, and the instructions certainly did not take from the jury the concept that a lack of evidence could give rise to a reasonable doubt.

I would affirm.

_____
Justice