No. 91-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

LEROY P. FLESCH,

     Defendant and Appellant.

**FILED**

SEP 14 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Gregory A. Jackson, Jackson & Rice, Helena, Montana
          Wendy Holton, Attorney at Law, Helena, Montana

     For Respondent:

          Mike McGrath, Special Assistant Attorney General,
          Helena, Montana
          Merle Raph, Toole County Attorney, Shelby, Montana

Submitted on Briefs: July 30, 1992

Decided: September 14, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Ninth Judicial District of the State of Montana, in and for the County of Toole. The appellant, Leroy P. Flesch (Flesch) appeals his conviction by a Flathead County jury. The case was removed from Toole County for Flesch's trial on the offenses of aggravated kidnapping and intimidation, both felonies under § 45-5-303(1)(c), MCA and § 45-5-203(1)(a), MCA, respectively. We affirm.

Two issues are presented for our consideration:

1. Did the pre-accusation delay in charging Flesch irreparably damage his right to present an alibi defense?

2. Was the jury given an improper, insufficient and misleading definition of "reasonable doubt?"

At approximately midnight on June 4, 1990, as attorney Richard Beatty (Beatty) was leaving his Shelby, Montana office through the rear door, he was attacked by an unidentified man in the carport behind his law office. The man grabbed Beatty, put his hand over Beatty's mouth and eventually pushed him to the ground. About that time a pickup truck pulled up to the scene of the struggle. Beatty was forced inside the pickup, but not before the unidentified man struck him in the face several times with his fists. With Beatty on his knees on the floorboards and his head face down, pinned to the seat, the unidentified assailant entered the pickup through the passenger-side door. The driver then drove the pickup out of the carport and west into a rural area outside Shelby.

Beatty testified that approximately fifteen to twenty minutes

2

after being forced into the pickup, the driver stopped the truck and "the thug [the unidentified assailant] grabbed me by the back of the collar, back of the neck, back of my jacket and tossed me out of the pickup on to the ground" where he was again violently assaulted.

After repeatedly assaulting Beatty, the "thug" stopped and told him to get back into the truck with the driver who had been sitting behind the wheel during the latest assault. Beatty testified that at this time the driver identified himself as the appellant, Leroy Flesch. Beatty, indeed, recognized the driver as Flesch, a former resident of Shelby and former client of his law firm.

After Beatty realized who the driver was, discussion began between Flesch and Beatty regarding what was happening and why. Beatty testified that it was during this discussion that Flesch made his demands known: Flesch wanted his legal files from Beatty's law office and $20,000 in cash. Beatty testified that Flesch stated, "I know you didn't work on the files, those other guys [in the firm] did it. I'm not through with them yet. Their day will come but you were a senior member of that firm and I've been going through hell for the last eight years and you're going to pay for it . . . [and] it cost a lot of money to hire thugs. . . ." Flesch demanded that Beatty deliver the files and $20,000 for his time and trouble.

In addition to the demand for his files and the cash, Flesch told Beatty that prior to that evening's events he had been

watching him and learned his work routine. He said that he had not only hired the one thug but had two other persons watching Beatty's home, so that if he called the sheriff or law authorities after he was released, Beatty's wife would be in danger.

Beatty informed Flesch that he would not be able to raise $20,000; "Every time I told him that I couldn't get him the money it would make him mad." Thereafter, Beatty testified, Flesch "motioned with his hand, he said I think you need a little tuning up, . . . [whereupon] the thug reached in [the truck cab] and he grabbed me by the shirt front and pulled me around and whacked me in the face a couple more times. . . ." After a second threat to "tune him up," Beatty finally agreed to get the files together, put them in a box along with the $20,000, and deliver them to Flesch in Helena, Montana.

Flesch told Beatty that if he did not deliver the files and money within one week, Flesch would "not . . . have you stabbed or shot or anything like that, I'm not that cold hearted, but I will have these thugs come and break your arms and legs, and if you don't get this done in a week, it's going to be too bad for you and too bad for your family."

After more than an hour of being held captive by Flesch and his thug, Beatty was dropped off at a cemetery south of Shelby. He then walked to his office to retrieve his car, drove home and awakened his wife at approximately 2:30 a.m. She was a witness as to his condition at the time he returned home. She testified his face was swollen, his shirt had been torn open and he was "upset

4

and scared."

Beatty reported the incident on June 6, 1990 when he met with the county attorney and sheriff and deputy sheriffs and gave them the details of the assault and kidnapping. Thereafter, Toole County law enforcement authorities conducted an extensive investigation. Statements were taken and transcribed, and agents of the State Department of Justice and the Lewis and Clark County Sheriff's Office were brought in to try to locate the truck in which Beatty had been taken when he was kidnapped. The authorities in Helena located the type of pickup truck that Beatty had described at Flesch's residence in Helena.

Flesch ultimately was arrested on October 5, 1990. He filed a motion to dismiss for failure to charge within a reasonable time, attaching affidavits of his wife and Beverly Finstad, a Helena casino employee. At a hearing held on April 8, 1991, both Mrs. Flesch and Ms. Finstad were called as witnesses. At the hearing and later at the trial, both testified that they believed but could not be certain that Flesch was at the Gold Nugget Casino in Helena, Montana at the time of the incident. Flesch argues that due to the delayed arrest neither could positively testify about his activities that night. Had they known about the charges within a reasonable time after the incident, he argues, they would have been able to state with certainty whether he was in the casino at the time of the incident herein related. At trial neither Mrs. Flesch nor Ms. Finstad would positively state that Flesch was in Helena at the time of the assaults and kidnapping.

5

I

As to the first issue regarding the delay in filing the information against him and the denial of his motion to dismiss, Flesch relies on the Fifth Amendment right to due process of law and Article II, § 17 of the Montana Constitution. To prevail on such a motion he must show prejudice to the defense from the delay, a primary consideration in United States v. Marion (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; United States v. MacDonald (1982), 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696; United States v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752; State v. Burtchett (1974), 165 Mont. 280, 530 P.2d 471; and State v. Larson (1981), 191 Mont. 257, 623 P.2d 954.

As a final authority, Flesch relies heavily on a recent opinion of this Court, State v. Krinitt (Mont. 1991), 823 P.2d 848, 48 St.Rep. 1088. In applying Krinitt to the present case, however, Flesch admits that the prosecution was commenced within the applicable five-year statute of limitations, § 45-1-205(a), MCA. In Krinitt, this Court considered a pre-indictment delay of almost two years and found no basis to reverse the conviction. There we re-established the standard of review for a due process violation:

> Thus, in considering a defendant's claim that pre-indictment delay violated his due process rights, the court must first determine whether the defendant suffered actual, substantial prejudice. . . .
>
> Upon a showing that the defendant suffered actual, substantial prejudice from the delay, the court must then weight the justification for the delay, as well as the absolute length of the delay, to determine if due process has been denied. . . .

Krinitt, 823 P.2d at 852, 48 St.Rep. at 1090 (citations omitted).

6

Here, Flesch presented an alibi defense. To support that defense he called his wife and Beverly Finstad. At the pre-trial hearing on April 8, 1991, Ms. Finstad testified that she might have remembered having seen Flesch in the casino on the night of the crime--June 4, 1990--if charges had been brought within two weeks of that date. Under cross examination she stated that once two or three days had lapsed she could not swear under oath as to who was in the casino on any given day or given time. Further, she acknowledged that she could not remember who was in the casino six days prior to the hearing or whether Flesch was in the casino on April 2, only six days before the hearing.

Bonnie Flesch also testified at the pre-trial hearing that she was almost positive her husband was home the night of the alleged incident, but could not be certain. At trial, she testified that her husband was at home the night of the incident:

> Q: You earlier stated, positively, you couldn't say for sure whether Leroy Flesch was home that night, the night of June 4th and the early morning hours of June 5th, is that correct?
>
> A: No, I didn't say that. I said he was home. I don't know exactly what time he got home but I know he was home that night because when I got up at quarter after 5:00, he was home.

This alibi defense went to the jury and it failed. Thus it was not a State action that created any prejudice to Flesch regarding these witnesses.

Flesch asserts incorrectly that a 120-day delay occurred. In fact, only 107 days elapsed between June 4, 1990, when the crime was committed and September 20, 1990, when Flesch was charged.

7

Flesch falsely proclaims that "no further investigation took place after June 28, 1990." We conclude from the record that this is not correct. At trial the jury heard taped telephone conversations between Flesch and the victim, Beatty, which took place July 9, 1990. Undersheriff Jay Lambert testified at trial that he conducted an investigation of the matter into late July. The Toole County Attorney gave Beatty a tape recorder anticipating that Flesch would contact Beatty again since the $20,000 was not paid. When it became apparent that Flesch was not going to contact Beatty again, the county attorney filed the charges.

There is a balancing test in this state regarding the filing of charges. In State v. Curtis (1990), 241 Mont. 288, 297, 787 P.2d 306, 312 (citations omitted), this Court stated:

> Even if some prejudice had been proven in this case, that prejudice must outweigh the necessity of allowing a reasonable time to investigate the crime. In United States v. Lovasco, the United States Supreme Court recognized that reasonable investigative delay protects the interests of both the State and the defendant. From the potential defendant's perspective, premature indictment would,
>
> > "increase the likelihood of unwarranted charges being filed, and would add to the time during which the defendants stand accused but untried. These costs are by no means insubstantial since . . . a formal accusation may interfere with the defendant's liberty, disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."

We hold this case is well within the applicable statute of limitations in that only 107 days elapsed from the date of the crime itself to the filing of the charges. In Krinitt, this Court

8

upheld a pre-indictment delay of almost two years, far longer than the delay in the instant case.

## II

The second issue is whether the District Court properly instructed the jury on reasonable doubt. Flesch objected at trial to the instruction given by the trial court:

> Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would rely and act upon it in the most important of his or her own affairs. Beyond a reasonable doubt does not mean beyond any doubt or beyond a shadow of doubt.

In his objections to the instruction, Flesch relies on Cage v. Louisiana (1991), ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339, wherein the United States Supreme Court discussed the reasonable doubt instruction. Flesch alleges that in Cage the United States Supreme Court disapproved an instruction that was "strikingly" similar to the jury instruction given in this case. Reading Cage we find that the instruction there was considerably different from the instruction given in this case. The language in the Cage instruction is as follows:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilty, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty,

9

but a moral certainty.

Cage, ___ U.S. at ___, 111 S.Ct. at 329, 112 L.Ed.2d at 341. This is not "strikingly similar" to the instruction used in this case.

In State v. Lucero (1984), 214 Mont. 334, 343, 693 P.2d 511, 516, this Court specifically stated that more complicated instructions on reasonable doubt did not help clarify the State's burden of proof, but rather had a tendency to confuse the jury. In Lucero, this Court approved the instruction given in the present case, which is patterned after Model Montana Criminal Instruction No. 1-004. See State v. Goodwin (Mont. 1991), 813 P.2d 953, 48 St.Rep. 539. We hold that the reasonable doubt instruction given in this case was proper.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

September 14, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gregory A. Jackson
Jackson & Rice
833 Last Chance Gulch
Helena, MT   59601

Wendy Holton
Attorney at Law
44 W. 6th Ave.
Helena, MT   59601

Merle Raph
Toole County Attorney
P.O. Box 518
Shelby, MT  49474

Mike McGrath, Special Asst. Atty. General
Lewis & Clark County Attorney
228 Broadway
Helena, MT  59623

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy