No. 96-589

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

FILED

MAY 27 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

STATE OF MONTANA,

Plaintiff and Respondent,

v.

STEVEN J. LoPRESTI,

Defendant and Appellant.

APPEAL FROM:     District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Cynthia K. Thornton, Attorney at Law, Miles City, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

          Gary P. Bunke, Custer County Attorney, Miles City, Montana

Submitted on Briefs: April 10, 1997

Decided: May 27, 1997

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Steven Jude LoPresti (LoPresti) appeals from the judgment entered by the Sixteenth Judicial District Court, Custer County, on jury verdicts finding him guilty of sexual intercourse without consent and endangering the welfare of a minor. We affirm.

The sole issue on appeal is whether there was sufficient evidence to support the jury's guilty verdicts.

## BACKGROUND

The incident forming the basis of the charges against LoPresti occurred on November 28, 1995, in LoPresti's apartment at the Red Rock Village Inn (Red Rock) in Miles City, Montana, where he lived with this teenaged son and teenaged daughter, Christina. That afternoon, Christina and her fourteen-year-old friend and classmate, J.D., walked from school to the LoPresti apartment; J.D. was planning on spending the night there. Finding no one at home, Christina and J.D. walked to a local martial arts studio where LoPresti's son was taking lessons. After they left the studio, the girls either walked or were driven by LoPresti

to Christina's boyfriend's house. In any event, J.D. did not want to stay at the boyfriend's house and either walked or rode with LoPresti back to the Red Rock.

According to J.D., she and LoPresti drank beer at the Red Rock for approximately twenty to thirty minutes before Christina and her boyfriend arrived. The three teenagers went to Christina's bedroom, but J.D. returned to the living room where she and LoPresti continued to drink beer. LoPresti left for the store about that time and returned approximately twenty minutes later with more beer. J.D. claims she and Christina drank some beer with LoPresti before Christina left to walk her boyfriend home, leaving J.D. and LoPresti alone in the apartment. Christina denied seeing J.D. with any beer.

J.D. stated that LoPresti started making advances towards her, "one thing led to another" and they ended up in LoPresti's son's room "having sex." A short time later, Christina returned to the apartment and found the door locked. J.D. claimed that, after repeated knocking, J.D. let Christina and the owner of the Red Rock, Dolly Moore (Dolly), into the apartment once she had successfully "kicked [LoPresti] off [of her] and put on [her] pants." Dolly's and Christina's versions of the events differed from J.D.'s and from each other. Dolly stated that she unlocked the apartment door with her master key after noticing Christina's attempt to enter the apartment and that, upon entering, she saw LoPresti coming out of the bedroom tucking in his shirt; he looked "disheveled." J.D. came out shortly thereafter. According to Dolly, Christina asked J.D. why she had not opened the door and

3

J.D. responded that she had been asleep. Dolly then left the apartment to find J.D.'s parents. According to Christina, J.D. was sitting on the couch when Dolly let her into the apartment.

About that time, LoPresti left the apartment and J.D. stated she and Christina continued to drink beer. In the meantime, Dolly located J.D.'s mother, Laura Archeske (Laura), and stepfather, Brad Baumann (Brad), at the Alta Club where Laura was playing league pool. Dolly told Laura that "there was something going on" at the Red Rock and that J.D. was drunk and wandering around the parking lot of the Red Rock with Christina. Laura asked Brad to go to the Red Rock, pick up J.D. and take her home.

Brad arrived at the Red Rock as J.D. and Christina were leaving the apartment; he took J.D. home and put her to bed. Brad then returned to the Alta Club. When the pool game ended, Laura and Brad went home. Laura got J.D. out of bed and a "heated argument" ensued during which J.D. admitted to her mother that she had engaged in sexual intercourse with LoPresti. Enraged, Laura told J.D. to get into their car to go to the police station and to the hospital.

LoPresti arrived before they left, however, wanting to know why J.D. had been picked up early from his apartment. Laura directed J.D. back into the house and LoPresti followed. Laura accused LoPresti of getting J.D. drunk and "screw[ing]" her; LoPresti denied the accusations. Laura then grabbed LoPresti around the throat, released him and grabbed his throat again. LoPresti continued to deny the accusations when J.D. said that he had better tell Laura what had been going on because she had already done so. Laura claims that

4

LoPresti finally said "Yes, I did it, but you don't understand. Let me explain." Not interested in an explanation, Laura started to grab LoPresti again. At that point, Brad pushed Laura aside and hit LoPresti four or five times in the face. Laura then called 911, stating "Come get [LoPresti] before I kill him." LoPresti later claimed that he was hit and knocked out, and that he awakened to a gun being pointed at him. Laura and Brad both denied pointing a gun at LoPresti.

Three Miles City police officers were dispatched to Laura and Brad's residence. Once the situation was assessed, one of the officers took J.D. aside and questioned her regarding the incident. J.D. told him of three separate sexual acts with LoPresti at the Red Rock and provided a list of the dates on which the acts had occurred. Laura then took J.D. to the local hospital where she was examined by the emergency room doctor who conducted a general physical examination and a detailed pelvic examination; he also collected samples of J.D.'s vaginal fluids for microscopic examination. LoPresti subsequently was arrested and charged by the State of Montana (State) with the offenses of sexual intercourse without consent, in violation of § 45-5-503, MCA, and endangering the welfare of children, in violation of § 45-5-622(2)(a)(i), MCA.

During the trial, the jury heard five days of conflicting testimony from nearly thirty witnesses. LoPresti testified on his own behalf and denied that he had had sexual intercourse with J.D. or provided her with beer. The jury found LoPresti guilty of both of the charged

5

offenses and the District Court sentenced him to fifteen years at the Montana State Prison with five years suspended. LoPresti appeals.

## STANDARD OF REVIEW

Our standard in reviewing the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Kelman (1996), 276 Mont. 253, 258, 915 P.2d 854, 857 (citations omitted). The credibility of witnesses and the weight to be given to their testimony are to be determined by the trier of fact; disputed questions of fact and credibility will not be disturbed on appeal. Kelman, 915 P.2d at 859 (citation omitted).

## DISCUSSION

Does sufficient evidence support the jury's guilty verdicts?

LoPresti contends that there was insufficient evidence to convict him because the State's case against him was entirely circumstantial and little physical evidence supported it. As a result, he argues that the jury was obligated to accept the interpretation of the evidence which pointed to his innocence. LoPresti's arguments are without merit.

With regard to LoPresti's contention that the case against him was entirely circumstantial, nothing could be further from the truth. Here, the victim testified that she had sexual intercourse with LoPresti on the date in question. This testimony constitutes direct

6

evidence that LoPresti committed the offense of sexual intercourse without consent since, as a minor, J.D. was incapable of giving her consent. See State v. Steffes (1994), 269 Mont. 214, 235, 887 P.2d 1196, 1209; § 45-5-501(1)(b)(iii), MCA. J.D. also testified that LoPresti supplied her with beer on the date in question, thus providing direct evidence that LoPresti endangered the welfare of a child by supplying an intoxicating substance to a person less than 18 years old, in violation of § 45-5-622(2)(a)(i), MCA.

Nor is LoPresti's passing reference to the small amount of physical evidence introduced on the sexual intercourse without consent charge helpful to his position. First, he cites to no authority under which physical evidence of sexual intercourse without consent is necessary to prove the case beyond a reasonable doubt. In any event, however, a pubic hair was found on LoPresti's shirt which did not match the hair sample he had given but was consistent with the victim's hair sample. Furthermore, the examining physician testified that the condition of J.D.'s hymen was consistent with having had intercourse within the preceding ten hours. Moreover, while no sperm or seminal fluid was found on the swabs taken during J.D.'s physical examination and, similarly, no seminal fluid was found on the bedding taken from the bed on which the intercourse allegedly took place, the lack of these types of physical evidence was consistent with J.D.'s testimony that LoPresti did not ejaculate and that intercourse was interrupted by Christina's knocking on the apartment door.

Finally, LoPresti's theory that the jury in this case was required to construe the circumstantial evidence in his favor is based on his mischaracterization of the evidence and

7

his misapplication of State v. Lucero (1984), 214 Mont. 334, 693 P.2d 511. As pointed out above, the State's case was based largely on the victim's direct evidence regarding the offenses charged; thus, the case against LoPresti was not entirely circumstantial. Furthermore, in Lucero, we were addressing whether a given jury instruction relating to circumstantial evidence was an accurate statement of the law. We relied on our earlier conclusion in State v. Fitzpatrick (1973), 163 Mont. 220, 225, 516 P.2d 605, 609, that a conviction in a case based solely on circumstantial evidence could be justified only where the facts and circumstances were entirely consistent with the theory of guilt and inconsistent with any other rational conclusion. Lucero, 693 P.2d at 513. In that context, we determined that the instruction at issue correctly stated that

> if the circumstantial evidence was susceptible to two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is the duty of the jury to adopt the interpretation which points to the defendant's innocence and reject that interpretation which points to his guilt.

Lucero, 693 P.2d at 513-14. It is clear that Lucero applies only where the case rests entirely on circumstantial evidence; that is not the situation before us here. For that reason, the question of whether the circumstantial evidence in this case was susceptible to two reasonable interpretations such that the jury would have been required to adopt the interpretation pointing to LoPresti's innocence does not arise here.

In this case, the jury had before it the victim's direct testimony that she had sexual intercourse with LoPresti on the date in question, the victim's admission to her mother and

8

Brad that the intercourse had occurred, and LoPresti's own admission in the presence of Laura and Brad. The jury also heard testimony from another person to whom LoPresti admitted that "he had sexual intercourse with [J.D.]," referred to her as "a friend of his daughter's" and stated "[he] knew she was 14 . . . ." Physical evidence also supported the State's case and circumstantial evidence abounded. With regard to the endangering the welfare of a child charge, the victim provided direct evidence that LoPresti supplied her with beer and Christina's boyfriend testified that he saw LoPresti and J.D. drinking beer together that day.

While LoPresti testified that he did not have intercourse with J.D. on the date in question or any other date, and tried to establish at trial--as he argues here--that much of the State's evidence was "suspect," these are matters which go to the weight of the evidence and the credibility of the witnesses. Thus, they were matters within the province of the jury as the trier of fact, not this Court. See Kelman, 915 P.2d at 859.

Reviewing the evidence in a light most favorable to the prosecution, we conclude that sufficient evidence exists from which the jury could find the essential elements of the offenses charged beyond a reasonable doubt.

Affirmed.

_____
Justice

9

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10