No. 96-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

PATRICK DALE NEARY,

Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District, In and for the County of
Custer, the Honorable Kenneth R. Wilson, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Terry J. Hanson, Miles City, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Christina Goe,
Assistant Attorney General, Helena, Montana

Garry P. Bunke, County Attorney, Miles City, Montana

Submitted on Briefs: June 26, 1997

Decided: September 11, 1997

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury in the Sixteenth Judicial District Court, Custer County, found Patrick Neary guilty of aggravated assault. Neary appeals. We affirm.

We restate the following two issues Neary raises on appeal:

1.    Is the jury verdict supported by substantial evidence?

2.    Did the District Court err when it granted the Stateþs proposed jury instruction No. 13 and denied Nearyþs proposed weapon instruction?

BACKGROUND

On June 7, 1995, Patrick Neary invited Victoria Haaser to his house in Miles City, Montana. The two spent much of the day in bed together. That afternoon, Neary received a phone call from another woman. Haaser left, informing Neary, "Iþm finished with you." Later, Haaser and Neary separately visited several Miles City bars. When the bars closed, Neary stopped to talk with Haaser after he saw her van parked outside Linda Merchantþs house.

Various individuals gathered in a room above a flight of stairs leading from Merchantþs garage to her house observed Neary and Haaser standing together on the stairs. Donald Bair heard a "thud" and ran to investigate. He saw Haaser falling down the stairs as Neary backed away and headed for the garage door saying, "Iþm getting the hell out of here." Bair rushed down the stairs. Haaser had landed with her head on the floor and her feet lying up the stairs. Blood was flowing from her head, nose, and ear. Bair propped Haaser up, placed her over his shoulder in a "firemanþs carry," and drove her to the hospital.

Bair did not see Neary holding Haaser. During cross-examination, he maintained that Haaser was still falling when he arrived. Bair testified that when he sat Haaser on the stairs, her head was nowhere near a pipe which protruded from the garage wall. Darin Ewalt heard a "loud crack." As he came to the top of the stairs, Haaser was still falling. He observed Neary leaving the garage, but did not see him holding Haaser at any time.

According to Linda Merchant, Neary and Haaser had an argument at her house earlier the evening of June 7, 1995. After she asked them to leave, Neary and Haaser departed separately. When Neary returned to Merchant's house after the bars closed, Haaser agreed to speak with him, but Merchant was nervous about what might happen. She testified:

I wanted them to come upstairs so . . . we could keep an eye on them. I left the door open to the top of stairs into the house to where we were at, just above them. So we could hear in case . . . it got out of hand.

. . .

[A]fter I checked on them, I walked up . . . into my bedroom . . . and sat down on my stool.  I just barely got sat down, and I heard it.  It sounded like, I believe, a shotgun.  It was just a bang.

I have a china closet in my bedroom thatþs against the far wall, the dishes in it rattled.  And thatþs when I looked and Donny Bair and Darin Ewalt were literally falling over each other to go down and see what happened, and thatþs when I went down.

As Merchant stood at the top of the stairs, she saw Bair attempting to sit Haaser up on the stairwell.  Neary was standing in the garage, and Merchant yelled at him to leave.  She did not notice whether Neary had anything in his hands.

    Shannon Dalbec, one of Nearyþs friends, testified that Neary arrived at her home around 3:00 a.m.  Neary stated Haaser had fallen, he was innocent, and "he was going to leave town because even if he was innocent nobody would believe him."  Later that morning, Neary called Dalbec and said he was going to Canada and was going to take a boat to Mexico.  Monica Foreman testified that Neary telephoned her between 3:30 and 4:30 a.m.  He stated, "I hurt Vicki really bad.  Itþs my fault."  Neary informed Foreman that he was leaving town or probably the country.

    At 7:30 a.m., Miles City police arrived at Merchantþs house.  Inside her garage, they photographed blood stains on the wall, concrete floor, and stairs.  They also searched the area for a weapon but were unable to find one.

    Due to the severity of Haaserþs injuries, she was airlifted to St. Vincent Hospital in Billings, Montana.  Upon learning this information, Neary drove to Billings.  Ella Wood, Haaserþs mother, testified that Neary was already at St. Vincent Hospital when she arrived at 10:00 a.m.  Neary told her a friend had called him and that was how he learned about the accident.  Haaserþs sister was also at the hospital.  When she asked Neary what happened, he responded that he did not know.  Neary explained he was not at Merchantþs house when the accident occurred and that a friend had called him.  Then he stated, "This is all my fault."  Donald Wood, Haaserþs father, confirmed that Neary claimed not to know anything about how Haaser was injured.

    Billings police arrested Neary at St. Vincent Hospital and seized his blood-stained clothes.  At trial, the Stateþs forensic scientist testified that the blood on Nearyþs shirt and pants was not his but belonged to the same type as Haaserþs.

    Neary testified that he stopped at Merchantþs house because he wanted Haaser to leave, claiming to be concerned about her children and career.  Haaser was standing on the steps with her back leaning against the wall near a pipe.  Neary started walking away from her.  Haaser fell, and when Neary turned around, she was lying on the floor.  Neary knelt beside Haaser and turned her over on her back.  Bair "shouldered" him out of the way, and Merchant yelled at him to leave.

Neary denied hitting Haaser on June 8.  He claimed his statements to friends and Haaserþs family were either taken out of context or were lies.  During cross-examination, he stated that when he examined Haaser, he did not observe anything stuck to her head. He further claimed that he received blood stains on his clothing when he knelt down to examine Haaser.

As a  result of her injuries, Haaser has no memory of the incident and suffers long-term brain damage.  She testified that prior to the incident, however, Neary had not shown any concern for her children or her career.

At trial, two physicians testified regarding the extent of Haaserþs injuries.  Dr. Fred McMurry, Haaserþs attending neurosurgeon and the Stateþs medical expert, testified that Haaser suffered a subdural hematoma and an extradural hematoma on the right and left sides of her head.  She also received a fracture to the left side of her head and a scalp injury.  Dr. McMurry testified that the injury, "a round hole in the scalp going right down to bone," was probably caused by a blow to the side of the head.  It would be unlikely for a fall to cause such an injury unless it was from a considerable distance onto an object.

Dr. Scott Callaghan, a neurologist and Nearyþs medical expert, testified by deposition that Haaserþs injuries would not be expected to result from a punch from a bare fist but could have been caused by a fall from a considerable distance and hitting an object on the floor.  Her scalp wound could not have been caused by hitting a flat surface.  Dr. Callaghan did not disagree with Dr. McMurryþs opinion that Haaserþs injury could also have been caused by a blow to the side of the head with an object.  According to Dr. Callaghan, Haaser had a blood alcohol level of .15, tested positive for amphetamines, and was taking a prescription medication.  This combination would cause her to have a propensity to fall.

On June 26, 1995, the State charged Neary with attempted deliberate homicide, or in the alternative, aggravated assault.  The information stated: [O]n or about June 8, 1995, in Custer County, Montana, . . . Patrick Neary . . . did commit the offense of attempted deliberate homicide, a felony, as specified in section 45-4-103(1) and 45-5-102(1)(a) . . . or, in the alternative, aggravated assault, a felony, as specified in section 45-5-202(1)[.]

The State alleged the facts constituting the offense of aggravated assault as: Patrick Neary . . . purposely or knowingly caused serious bodily injury to Victoria Haaser, by striking her with some type of blunt weapon, on the left side of her head, just above the ear, with enough force to cause trauma to the left side of the skull with right subdural hematoma.

At the close of the Stateþs case-in-chief, Neary moved for a directed verdict or to

dismiss the information based on insufficient evidence.  The court took his motion under
advisement.  At the conclusion of the case, Neary again moved for a directed verdict and
to dismiss the information.  The court granted a directed verdict on the charge of
attempted deliberate homicide but concluded there was sufficient evidence for the charge
of aggravated assault to go to the jury.

During settlement of jury instructions, Neary objected to the Stateþs proposed
instruction No. 13 because it stated "caused serious bodily injury" but did not include that
the serious bodily injury was caused by a weapon.  Neary requested the addition of the
words "with a weapon" to the Stateþs proposed instruction No. 13.  The court overruled
the objection and gave the Stateþs proposed instruction No. 13.

A jury found Neary guilty of aggravated assault, and the District Court sentenced
him to twelve years at the Montana State Prison with seven years suspended.  Neary
appeals.

DISCUSSION

1.    Is the jury verdict supported by substantial evidence?

The standard of review of sufficiency of the evidence is whether, after reviewing
the evidence in a light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.   State v.
Bower (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1110.   The credibility of witnesses and
the weight to be given to their trial testimony are determined by the trier of fact, and if
events are capable of different interpretations, the trier of fact determines which is the
most reasonable.  State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d, 679, 686;
State
v. Brogan (1993), 261 Mont. 79, 87, 862 P.2d 19, 24.

Neary argues this is a circumstantial evidence case and the evidence does not
support the verdict.  He contends, as he did at trial, that Haaser lost her balance, fell
down the stairs, and struck the floor where there was a beer bottle cap which removed
a piece of her scalp.  When Haaser was taken to the hospital, the bottle cap fell from her
head.  Neary relies on State v. Lucero (1984), 214 Mont. 334, 693 P.2d 511, to argue
that when circumstantial evidence is susceptible to two reasonable interpretations, one
pointing to innocence and one pointing to guilt, a jury must adopt the interpretation that
points to innocence.

In Lucero, we concluded that absent affirmative evidence to the contrary, the jury
did not err as a matter of law in finding that the defendantþs interpretation of the
circumstantial evidence was not reasonable.  Lucero, 693 P.2d at 513-14.  At trial Neary

did not produce a bottle cap or any physical evidence of Haaser's missing hair or scalp. He testified that he examined Haaser and did not see anything stuck to her head. Neary did not provide affirmative evidence that Haaser fell on a bottle cap, or other similar object, with such force to cause her injuries. His bottle cap theory was nothing more than an alternative theory for the jury's consideration.

The State argues the verdict against Neary is supported by substantial evidence. We agree. Neary and Haaser were involved in a sexual relationship and argued on June 7. Merchant testified that she was afraid to leave the two alone together. Three witnesses at Merchant's house testified they heard a loud noise and ran to the stairs to investigate. When they arrived, Neary was not touching Haaser, but was backing away towards the garage door. This testimony is inconsistent with Neary's explanation that he received blood on his clothing because he kneeled to examine Haaser. A forensic expert identified the blood type on Neary's pants and shirt as Haaser's. Blood spatters covered the wall, stairs, and floor near where Neary and Haaser were standing. Neary left Merchant's house immediately after Bair, Ewalt, and Merchant arrived. The State's medical expert testified it would be unlikely that Haaser's injuries were caused by a fall onto a flat surface.

Neary's statements and actions following the incident also support the jury's verdict. After leaving Merchant's house, Neary arrived at Dalbec's home and informed her that he was leaving town. Later, he called her and said he was going to Canada and would take a boat to Mexico. Foreman testified that Neary called and told her that he had hurt Haaser badly, that it was his fault, and that he was going to leave town or probably the country. Although Neary admitted being at Merchant's house, Haaser's family testified that Neary did not know what happened to Haaser, that he was not there, and that a friend had called him.Neary relies on State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455, to argue that his statements made to various persons after the incident as subsequent inconsistent statements cannot be the sole substantive evidence upon which a jury should be allowed to base guilt. Gommenginger is distinguishable from this case. Gommenginger involved testimony from a drug informant who had a motive to lie. Here, the State's witnesses had no identifiable motive to lie. In Gommenginger, the court restricted cross-examination of the informant. Neary was free to cross-examine and impeach the State's witnesses, which he attempted to do.

Bair's only prior inconsistent statement in this case was his testimony from the hearing on Neary's motion to dismiss. At trial, Neary attempted to impeach Bair by using his previous testimony. Bair explained the inconsistencies and the jury was free

to weigh Bairþs testimony.

Moreover, Nearyþs subsequent inconsistent statements were not the only evidence upon which the jury could base Nearyþs guilt. Nearyþs acts before, during, and after the incident would allow a jury to find him guilty. We conclude that Nearyþs subsequent inconsistent statements were not the sole substantive evidence upon which a jury could have found him guilty of aggravated assault.

In further support of his argument that the verdict is unsupported by the evidence, Neary relies on State v. Gould (1985), 216 Mont. 455, 466, 704 P.2d 20, 28, to argue that his out-of-court statements do not meet the requisite trustworthiness as competent admissions against interest. Gould differs from the present case. Gould moved to suppress his pretrial admission pursuant to 46-13-301, MCA (1981). Neary did not move to suppress his out-of-court statements, and he did not object to the admission of his statements at trial. We will not review issues which have not been properly preserved for appeal. See 46-20-104(2), MCA; State v. Arlington (1994), 265 Mont. 127, 151, 875 P.2d 307, 321.

When the evidence is viewed in a light most favorable to the prosecution, the jury, as a rational trier of fact, could reasonably have concluded that Neary purposely or knowingly caused Haaser serious bodily injury. We hold that the verdict convicting Neary of aggravated assault is supported by substantial evidence.

2. Did the District Court err when it granted the Stateþs proposed jury instruction No. 13 and denied Nearyþs proposed weapon instruction?

We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Leyba (1996), 276 Mont. 45, 51, 915 P.2d 794, 797.

Section 45-5-202(1), MCA (1985), provides, "(1) A person commits the offense of aggravated assault if he purposely or knowingly causes serious bodily injury to another." Section 45-5-202(2), MCA (1985), provides, in relevant part, "(2) A person commits the offense of felony assault if he purposely or knowingly causes: (a) bodily injury to another with a weapon[.]"

The Stateþs proposed instruction No. 13, adopted by the court, stated:
To convict the defendant of aggravated assault, the State must prove the following elements:

1. That the defendant caused serious bodily injury to Vicki Haaser, and
2. That the defendant acted purposely or knowingly.
Neary requested the addition of the words "with a weapon" to the above instruction.

Neary argues that the District Court erred when it granted the Stateþs proposed instruction No. 13 and refused his proposed weapon instruction because the information alleged that he caused Haaser serious bodily injury using a weapon.

The State charged Neary with aggravated assault, not felony assault. Felony

assault requires the use of a weapon; aggravated assault does not. Cf. 45-5-202 (2),
MCA (1985) and 45-5-202(1), MCA (1985). See also Arlington, 875 P.2d at 307.

The information charged Neary with attempted deliberate homicide, or in the alternative, aggravated assault. Under the section "facts constituting the offense," the information stated:

Neary . . . purposely or knowingly caused serious bodily injury to Victoria Haaser, by striking her with some type of blunt weapon, on the left side of her head, just above the ear, with enough force to cause trauma to the left side of the skull with right subdural hematoma.

The District Courtþs jury instruction No. 13 stated the elements of aggravated assault as they are enumerated in 45-5-202(1), MCA (1985). Because 45-5-202(1), MCA (1985), does not require that serious bodily injury be caused by a weapon, the jury was not required to find that Neary used a weapon to find him guilty of aggravated assault.

Neary maintains he was prevented from preparing an adequate defense because instruction No. 13 does not require the use of a weapon, but the facts in the information alleged that he used a weapon. He relies on State v. Later (1993), 260 Mont. 363, 860 P.2d 135. In Later, the State charged the defendant with misdemeanor official misconduct. During settlement of jury instructions, the State conceded that it had charged the defendant under the incorrect statute. The State offered an alternative instruction charging the defendant with violation of another statute. We reversed, reasoning that the function of an information is to notify the defendant of the offense charged, thereby giving him the opportunity to defend. Later, 860 P.2d at 137, citing State v. Tropf (1975), 166 Mont. 79, 88, 530 P.2d 1158, 1163.

Nearyþs reliance on Later is misplaced. Unlike in Later, the State charged Neary with aggravated assault, which was contained in the information, and the District Court instructed the jury using the same language taken from the aggravated assault statute contained at 45-5-202(1), MCA (1985). Notwithstanding the recital of facts contained in the information, Neary knew with what offense he was being charged and its elements. The jury had to find that Neary purposely or knowingly caused serious bodily injury to Haaser in order to convict him of aggravated assault. We conclude that Neary was not prevented from preparing an adequate defense based on the courtþs instruction of the elements of aggravated assault.

The cases cited by Neary from other states are also distinguishable from the facts of this case. In State v. Jones (Kan. 1995), 896 P.2d 1077, the trial court added another type of intent to the jury instruction which was not included in the information. In

Atterberry v. State (Okla. Crim. App. 1986), 731 P.2d 420, the trial court broadened the
definition of child abuse by adding elements not contained in the statute.  In State v.
DeSantos (N.M. 1976), 553 P.2d 1265,  the court erred by adding instructions on felony
murder and depraved mind murder when the evidence did not support the instruction.

We conclude that the District Courtþs jury instructions, as a whole, fully and fairly
presented the applicable law on aggravated assault.  Nearyþs proposed weapon instruction
was an inaccurate statement of the law and was an attempt to broaden the statutory
definition of aggravated assault.  We hold that the District Court did not abuse its
discretion when it adopted the Stateþs proposed instruction No. 13 and denied Nearyþs
proposed weapon instruction.

Affirmed.

/S/   J. A.   TURNAGE


We concur:

/S/   JAMES C. NELSON
/S/   KARLA M. GRAY
/S/   WILLIAM E. HUNT, SR.
/S/   JIM REGNIER